Hitchcock, G. J.
The original action was by the indor see of a promissory note against the indorser. It does not appear that any demand of payment was made of the maker of the note, and notice of non-payment given to the indorser. If such demand was made, it was probably not made in time to charge the indorser.
The simple question raised by the plaintiff is, whether un der the circumstances of the case, he was not excused from proving demand upon the maker, and notice to the indorser of non-payment.
*179 There is no controversy as to the general rule applicable to cases of this character. The indorsee of a promissory note, if he would charge the indorser, must make use of due diligence to collect the note of the maker. What constitutes due diligence, is well settled by the commercial law, but it is unnecessary to resort to the commercial law to ascertain what is due diligence, that question being settled in this state by statute. By the first section of the act of March 13, 1839, (Swan’s Statutes 588,) “ supplementary to an act making certain instruments of writing negotiable,” it is provided “ that all bonds, notes or bills, made negotiable by the act to which this is supplementary, shall be entitled to three days grace, in the time of payment.” And the second section isas follows: “that the demand of payment from the maker, on the third day of grace, given as aforesaid, and notice of non-payment thereof, to the indorser, within a reasonable time thereafter, shall be adjudged dne diligence,” etc. This statute is not materially, if at all var riant from the rules of the commercial law, and, as I suppose, was enacted in consequence of a disposition manifested by our wants, to restrict the rigid rules of the commercial law as to demand and notice, to paper negotiated at banks, or circulating among men strictly commercial.
To this general rule there are exceptions. In England, if the maker of the note is entirely insolvent, the holder has been excused from making demand of payment, because it is supposed that the case is not within the reason of this rule. That reason is, that an indorser may have opportunity to obtain from the maker an indemnity. And it is said that where the indorser is utterly insolvent, no such indemnity can be procured, therefore the reason of the rule' ceases. There is much force in this course of argument; but in this state it has never, to my knowledge, been held that the insolvency of the maker excuses demand and notice.
In the case before the court, it is claimed that the indorser was fully indemnified against loss by the indorsement, and that therefore he is not within the reason of the rule requiring the *180 use of due diligence; and the position is assumed by the counsel for plaintiff, that where an indorser of a promissory note is-secured, by mortgage or otherwise, the holder of the paper is excused from making demand of payment from the maker, and giving notice of'non-payment.
I am not aware that the question now raised, has ever been-heretofore presented to the Court in Bank; but, so far as my knowledge extends, the court upon the circuit have uniformly held the law to be as insisted upon by plaintiff’s counsel. In truth, the law seems to be thus settled by numerous decisions both English and American. Without referring to English au thorities, the following American cases may be cited as sustain ing this position: Bond v. Farnham, 5 Mass. Rep. 170; Mead v. Small, 2 Greenleaf 207; Mechanics’ Bank v. Griswold, 7 Wend. 165.
Numerous other cases might be referred to, but it is unnecessary. The reason upon which the decision in these eases is-based is, that the indorser, having anticipated the possibility of liability, and having secured himself against loss in consequence of such liability, he would be placed in no better situation by demand and notice. And when the demand and notice could be of no advantage to him, it would seem to be unreasonable to require that such demand should be made and notice given.
It is not contended by defendant’s counsel that the law is not as claimed by the plaintiff; but it is urged that the security in this case is not of that character that would justify the indorser in failing to make use of due diligence. It is true that, in the case under consideration, the indorser did not receive collateral or other security, expressly to indemnify him. against the indorsement. But if he was and is perfectly secure against loss, it is not deemed that the particular form of security would make any difference in the case. The bill of exceptions shows that the defendant sold by contract, to Kille, a quarter section of land; that the note in controversy was for a part of the consideration money; that he retained the title in his own hands until the entire consideration should be paid; that *181 the consideration has been paid with the exception of this one note, and that when called upon for payment of this note, he admitted .that he was fully secured for- his liability by said land.
Under these circumstances, it seems to the court that th6 defendant cannot be relieved from the payment of this note, on the ground that there was no demand and notice. The evidence offered by the plaintiff was sufficient to justify and require a payment in his favor unless rebutted, and the superior court erred in directing a nonsuit, for' which error the judgment is reversed and the cause remanded for further proceedings.