*N. S. Scott*, for the relator.

THE FREMONT FERRY AND BRIDGE COMPANY, APPELLEES, v. THE BOARD OF COUNTY COMMISSIONERS OF DODGE COUNTY, NEBRASKA, APPELLANTS.

1. **Estoppel:** BY ACTS IN PAIS. If a company, incorporated with the exclusive privilege to establish and keep a ferry and wagon bridge across a river, within a certain district, stand by and silently see and permit other parties to construct and complete another wagon bridge across the same river, within the same district—or acquiesce and consent to the erection thereof—it will, by reason of such silence or assent, be estopped from controverting, by injunction or otherwise, the right of the other parties to use and repair such bridge.

APPEAL from the district court of Dodge county. Tried below before POST, J. The case is stated in the opinion.

*W. H. Munger*, for appellant.

I. The facts stated in the answer, which are admitted by the demurrer, operated as a license to defendant, and such a license becomes irrevocable when, as in this case, defendant, acting under the same, has expended a large amount of money for the purpose of enjoying such license. 2nd *American Leading Cases*, page 751, where the subject is fully discussed in note. *Rerick v. Kern*, 14 Serg. and Rawle, 267. *The Ameriscoggin Bridge v. Bragg*, 11 N. H., 102. *Woodbury v. Parshley*, 7 N. H., 237. *Ricker v. Kelley*, 1 Maine, 117.

In *Clement v. Durgin*, 5 Maine, 9, the broad ground was taken that when the continuance of a license is necessary for the protection of an interest which has been acquired on the faith of an express or implied agreement that the license should not be revoked, the case will fall within the general principle that no man shall be allowed to falsify expectations which he has created, and on which others have been led to act; the court were clearly of the opinion that the interest of the plaintiff in the continuance of a dam which had been erected on the faith of this license was sufficient to preclude the defendant from recalling it subsequently, without a tender of the expense which had been incurred in erecting it.

But it is contended that as the defendant had no power to construct a toll bridge, the law of estoppel would not apply. The bridge in question is a public bridge; it was built by the public out of funds belonging to the public; is owned and controlled by the public; the same rules should not apply as in cases where aid is voted to a private individual or corporation.

Again, although the proposition submitted to the voters of Fremont precinct to vote $50,000 bonds to construct said bridge, by virtue of which proposition

said bridge was built, contained a provision to make said bridge a toll bridge, yet if, by omitting or striking out the parts of said proposition which provide for tolls (the portion claimed to be illegal) the remainder would constitute a complete and valid proposition sufficient of itself (without the aid of such part so stricken out as illegal) to carry out the intent of the voter, then it is the duty of the court to give force to such remaining portion. *Santo v. The State*, 2 Iowa, 165. *Bank of Hamilton v. Dudley*, 2 Pet., 492. *Clark v. Ellis*, 2 Blackf., 8. *People v. Lawrence*, 36 Barb., 190. *Robinson v. Bidwell*, 22 Cal., 379. *Maize v. State*, 4 Ind., 342. *Warren v. Mayor*, 2 Gray, 84. Dillon on Mun. Corp., Sec. 354. Cooley's Con. Lim., 177.

II. In the present case the proposition is complete in every particular when the portion relative to tolls is omitted. It provided for the issuance of the bonds, when they mature, etc., and for the annual levy of a tax to pay them as they mature; this is all the law requires. It is true that the amount of tax is limited, but the presumption is that the county commissioners were satisfied that the one-mill was sufficient, and their judgment cannot be questioned in collateral proceedings. *Commissioners of Knox Co. v. Aspinwall*, 21 How., 544.

III. The object of the voter was to obtain a bridge; tolls was a secondary and immaterial matter. If there ever was a case in which equity would enforce a rigid rule of estoppel, it seems to me it should be enforced in the present case. Here we find plaintiff not only silently witnessing and acquiescing in the trespass upon the franchise, but aiding, encouraging, and assisting the defendant by the united voice and vote of each member of plaintiff corporation in the large expenditure of money.

Does plaintiff bring itself within the rule that to obtain equity it must do equity? Has not its action been such, that equity would require that, before the relief asked can be granted, it should offer to reimburse the defendant the amount of money it has expended?

If the defendant has no authority to collect tolls it can stop, and then there is a free bridge; if they refuse to stop, let the proper action be brought to compel them; if the law of estoppel applies in this case, then plaintiff cannot in this action enjoin the collection of tolls. They do not come within the rule required as stated by this court in *Shed v. Hawthorne*, 3 Neb., 179, which was an action to enjoin the collection of tolls on this same bridge.

*W. A. Marlow*, for appellee.

I. If the answer in this case is sufficient, it must be on the theory that precincts, counties, and cities can build and operate toll bridges. The only object in building the bridge in question is for the purpose of making it a toll bridge, in order to raise money to pay the interest on the bonds issued for that purpose.

County commissioners have no authority to build or operate toll bridges. They have power to lay out roads and build bridges, but when laid out and bridges erected thereon, they become public highways. The funds used for this purpose are raised by taxation on all the property within the county. When the funds are insufficient for the purpose of building such bridges as the public demands, then the commissioners have power to submit the question of issuing the bonds of the county or precinct to a vote of the people of the county or precinct, in order to aid them in building such

bridges as they were unable to build out of the funds collected by taxation in the ordinary way. The bonds when issued cannot be used for any other · purpose. The funds thus raised are under the control of the commissioners, to be by them expended in erecting bridges on public highways; not in building toll bridges, grist mills, or in aiding any private enterprise. By an examination of the statutes it will readily appear that toll roads and bridges are unknown. *Gen. Stat.*, 234, 295, 954.

The contract alleged in the answer between the Fremont Ferry and Bridge ·Company, and the board of ·county commissioners acting for and in behalf of Fremont precinct, is absolutely void. Have we a statute which authorizes it? Certainly not. The commissioners have power to build public bridges, but no other kind. *U. P. R. R. Co. v. Colfax county*, 4 Neb., 450.

If the commissioners had no power to make this contract then they have no power to enforce it.

Had the proposition in the first place been to build a public wagon bridge, and the stockholders and officers of the company had consented, they would be estopped from asserting their rights after the money had been expended. It requires two or more parties to make a contract; in this case we have but one. The company consented that the commissioners should · build a toll bridge in behalf of the precinct. The commissioners had no power to accept this proposition.

The commissioners could not sue the company provided it failed to comply with the terms of the contract. The rule I understand to be this: ˙County commissioners of a county can bring no suit, make no contract, or perform any official act except as provided by statute. *Ohio v. Yeatman*, 22 Ohio S., 546. *Stetson v. Kempton*,

13 Mass., 271. *Smith v. Com'rs of Portage Co.*, 9 Ohio, 26. *Vincent v. Nantucket*, 12 Cush., 103. *Halstead v. Mayor, etc.*, 3 N. Y., 430.

II.   The right to take toll is a franchise, and must be conferred by statute before the right exists. *Seymour v. The Milford and Chillicothe Turnpike Co.*, 10 Ohio, 476. *Wiswall v. Hall*, 3 Paige, 313.   *Thompson v. N. Y. & Harlem R. R. Co.*, 3 Sandf. Ch. [625].   *Fall v. County of Sutter*, 21 Cal., 237.

III.   The bridge and ferry company have an exclusive privilege at the point named to operate a toll bridge. The company has in all respects complied with the act of incorporation; so long as that statute is not repealed, neither private parties, private corporations, nor municipal corporations have any right to interfere in any way with this exclusive privilege; if they do a court of equity will restrain the interference.   Hilliard on Injunctions, Sec. 44, page 536.   *Walker v. Armstrong*, 2 Kan., 198.   *Ogden v. Gibbons*, 4 Johns. Ch., 150. *Aiken v. The Western Railroad Corporation*, 20 N. Y., 370.   High on Injunctions, Secs. 580, 581, 587.   *The Niagara Falls International Bridge Company et al. v. The Great Western Railroad Company*, 39 Barb., 212. *Thompson v. The New York R. R. Co.*, 2 Sandf. Ch. [625].   *Osborn v. U. S. Bank*, 9 Wheat., 738.

GANTT, J.

The material allegations in the pleadings in this case are substantially as follows:   The plaintiff was incorporated by act of February 18, 1867, as the "Fremont Ferry and Bridge Company," with the exclusive privilege to establish and keep a ferry and bridge across

the Platte river, at any point in township seventeen north, of range eight east of the sixth principal meridian, in the county of Dodge. The corporation established a ferry within the time required by the act, and it is alleged that within two years past the plaintiff expended large sums of money in the erection of a wagon bridge across said river; that the defendants threaten and are about to erect a wagon bridge across said river within the limits of its franchise, which will lessen the value of said franchise and take away from the plaintiffs a large amount of tolls which it otherwise would receive; and therefore prays an injunction restraining the defendants from building such bridge. In their answer the defendants aver that on the eighth day of October, 1870, a proposition was, according to law, submitted to the voters of Fremont precinct, in said county, at a special election, to vote bonds of said precinct to the extent of fifty thousand dollars, to construct a wagon bridge across the Platte river in said precinct; that the proposition received a majority of all the votes cast at such election; that the bonds were issued and disposed of, and with the proceeds thereof, a wagon bridge within said precinct, across said river, was constructed and completed in the spring of 1871; that at the time the proposition was submitted and voted upon, all the stockholders, directors, and owners of said ferry and bridge franchise were residents and voters of said precinct; that the plaintiff had full knowledge of the submission of the proposition to issue the bonds of the precinct and of the result of the vote thereupon, and also had full knowledge of the advertising for bids and of the erection of the said bridge; that the plaintiff, its directors, and all the stockholders acquiesced and consented to the same. It is further averred that in the spring of 1874 a portion of said

bridge was destroyed, and that the plaintiff, by agreement with the defendants, assisted to repair the same, paying one-half of the expense of such repairs and receiving one-half of the proceeds arising from said bridge; that in the spring of 1876, a part of the said bridge was again destroyed, and that the only threats or acts complained of are those of repairing the said injury to said bridge so that the same may be fit for the use of the public. To this answer the plaintiff interposed a general demurrer, which was sustained, and the injunction was made perpetual. The case is brought here upon appeal.

Several questions were raised upon the argument of the cause, but we think the whole case, as presented for our consideration upon the issues raised by the pleadings, may be resolved into this one question: Whether the plaintiff, by its own conduct and acts, as set forth in the answer, is estopped from denying the defendants' right to repair and continue the use of the bridge erected by them in the spring of 1871. Perhaps an injunction to enjoin the building of the bridge in 1871 might have been properly granted if it had been applied for when the plaintiff first knew that steps were being taken to vote the bonds and construct the bridge. The omission to do so then was an implied assent to the erection of the bridge by the defendants for public use. The silence of the plaintiff when knowing its own rights, and having full knowledge of the steps taken by the defendants to build the bridge, will estop it after the completion of the work, or after large expenditures of money in its construction had been made; for such silence lulls to rest instead of warning to danger, and in the language of the books, it becomes a fraud. It is said that such silence, though negative in form, is operative in effect, and becomes suggestive in the seeming security it leads

to. But the case does not, however, depend merely upon an implied assent on the part of the plaintiff, for the answer distinctly avers that the plaintiff, its directors, and all the stockholders acquiesced and assented to the erection of the bridge by defendants, and the truth of this allegation is fully admitted by the demurrer.

This assent to the erection of the bridge, either by silence or by express consent, constitutes an estoppel in such case. And if the plaintiff is estopped from denying the use and enjoyment of the bridge as a public way, it certainly cannot enjoin the repairing of it, when such repairs become necessary from any cause whatever. Therefore, upon the facts admitted, we think considerations of public policy as well as recognized principles of justice between the parties, will not permit the plaintiffs to controvert the defendants' right to repair and enjoy the continued use of the bridge as a public way. In *Goodwin v. Cincinnati & Waterville Canal Co.*, 18 Ohio St. 179, it is said, that "where a party stands by, as we presume the plaintiff to have done in the present case, and silently sees a public railroad constructed upon his land, it is too late for him, after the road is completed, or large sums of money have been expended on the faith of his apparent acquiescence, to seek by injunction or otherwise, to deny the railroad company the right to use the property." *Pierson v. C. & W. Canal Co.*, 2 Disney, 104. *Doane v. Treasurer, etc.*, Wrights R., 752. *Hall v. Fisher*, 9 Barb., 30. *Gregg v. Wells*, 10 Adl. & Ellis, 90. Bigelow on Estoppel, 500. 2 Am. Lead. Cas., 571, *et seq.*

The demurrer should have been overruled in the court below; and, therefore, it is now ordered and adjudged that the demurrer be overruled; and it is further ordered, adjudged, and decreed, that the injunction

granted by the district court be dissolved, and the petition of the plaintiff be dismissed with costs.

DECREE ACCORDINGLY.