Organ v. Memphis and Little Rock Railroad Company.

## ORGAN v. MEMPHIS AND LITTLE ROCK RAILROAD CO.

1. PLEADING AND PRACTICE: *Error in adopting proceedings: Transfer to proper docket.*

An error of the plaintiff as to the kind of proceedings he adopts is no ground for dismissing his action, which may be transferred to the proper docket on the motion of either party. If such motion is not made, the error is waived and the cause should be tried according to the principles involved.

| 51 | 235 |
| 51 | 503 |
| 52 | 63 |
| 52 | 128 |
| 52 | 415 |
| 51 | 235 |
| 54 | 532 |
| 51 | 235 |
| 55 | 315 |
| 51 | 235 |
| 56 | 399 |
| 56 | 507 |
| 51 | 235 |
| 58 | 139 |
| 51 | 235 |
| 59 | 176 |
| 51 | 235 |
| 60 | 75 |
| 51 | 235 |
| s67 | 89 |
| 51 | 235 |
| 69 | 107 |
| 51 | 235 |
| 74 | 86 |
| 74 | 122 |
| 74 | 138 |
| 74 | 306 |
| 51 | 235 |
| 82 | 181 |
| 51 | 235 |
| 84 | 366 |

Organ v. Memphis and Little Rock Railroad Company.

2. SAME: *Misjoinder*: *Waiver*.

A misjoinder of causes of action is waived unless objected to before defence.

3. SAME: *Parties plaintiff: Action for damages to land of decedent.*

W. and O. were joint owners of certain lands. W. died in 1856, and his executor and devisees held possession of the lands jointly with O. until 1873, when partition was made and thereafter the devisees of W. held possession of the portion allotted to them. Part of such portion was wrongfully appropriated by the defendant in 1873 or in 1874, for railroad purposes. *Held:* That in 1880 the devisees could maintain an action to recover compensation or damages for such wrongful appropriation, although the executor had not then been discharged and was still acting. (Following *Mays v. Rogers*, 37 Ark., 155; *Stewart v. Smiley*, 46 Ark., 373; *Graves v. Pinchback*, 47 Ark., 470.)

4. RAILROAD COMPANIES: *Appropriating land for right of way.*

The charter under which the Memphis and Little Rock Railroad Company was organized, granted by the legislature January 11, 1853, gave it the right to enter on lands and appropriate a right of way, and limited the owner of the lands to a period of five years after the road was built on his lands, in which to apply for an assessment of damages. In 1873 all the property of the Memphis and Little Rock Railroad Company was sold under a deed of trust and conveyed to persons who in that year organized the Memphis and Little Rock Railway Company. *Held:* That the legislature could not empower the Memphis and Little Rock Railroad Company, to appropriate to its use private property without first providing for just compensation to the owner, and that company having failed to secure a right of way over the plaintiff's land, the Memphis and Little Rock Railway Company could only acquire such right in the manner prescribed by the laws under which it was organized.

5. SAME: *Same: Acts 1855 and 1873.*

The act of 1855 prescribing the mode of obtaining the right of way for railroad companies, and authorizing the owner of land taken for that purpose, to apply within a limited period for an assessment of damages, was repealed by the act of April 28, 1873, which embraces the whole subject matter of the former act and prohibits the appropriation of land as a right of way, without the owner's consent, until he is fully compensated therefor.

6. SAME: *Same: Injunction to prevent wrongful appropriation.*

Equity will enjoin a railroad company from taking possession of land in the construction of its road until proper compensation is made to the owner; and will, on timely application, also restrain the continuous, unlawful use

Organ v. Memphis and Little Rock Railroad Company.

of land by operating a railway over it without grant from the owner and without having instituted proceedings under the statute to acquire the right of way. But such relief will be denied to a land owner who acquiesces in the use of his property by a railroad company, until it has constructed across his land a track which at that point has become part of a line in which the public have an interest.

7. SAME: *Same: Claim to compensation: Enforcement against land.*

Where a railway company appropriates land to the use of its road without right acquired by purchase and without statutory proceedings for the assessment of damages, the owner may waive such proceedings and electing to regard the act of the company in taking the lands as done under the right of eminent domain, may demand and recover a just compensation. In such case the land owner assumes to the company the relation of a vendor who sells real estate on a credit, and while he holds the title equity will enforce his claim to compensation against the land, as it would a vendor's lien.

8. SAME: *Same: Alienation of land taken without compensation.*

Where a railway company takes land in the construction of its road without grant from the owner and without compensation, its alienee, mediate or immediate, can hold such land only by paying the value thereof, unless the owner is estopped to assert his claim to compensation by an equity growing out of his conduct.

9. SAME: *Same: Statute of limitations: When action of land owner barred.*

Seven years adverse possession of land, wrongfully taken by a railway company in the construction of its road, will bar an action to enforce the claim of the owner against the land, or to enjoin the company from using it until compensation is made.

10. SAME: *Same: Damage to riparian rights.*

Where lands bordering upon a navigable stream are partitioned, and by agreement of the owners the riparian rights belonging thereto are not divided, but remain their joint property, they can still maintain a joint action against a railroad company for damages to such rights caused by the company's wrongful construction of tracks and buildings. But no damages can be recovered in such action for the mere transportation of passengers across the river on a boat kept by the defendant for that purpose, unless it appears that the plaintiffs are licensed ferrymen.

11. SAME: *Same: Personal responsibility of company.*

Land bordering on a river and which was wrongfully appropriated by a rail-

road company, was lost by the caving of the river banks after the owner had commenced an action to recover compensation. *Held:* That, although no action could be maintained after the destruction of such land, to enforce the owner's claim against it or to enjoin its use, the company is personally responsible to him for its appropriation.

APPEAL from *Crittenden* Circuit Court in Chancery.

*W. H. Cate*, Judge.

*W. M. Randolph* and *T. B. Turley*, for appellants.

1.    That plaintiff's remedy was at law is no ground to dismiss the bill for want of equity. The cause should have been transferred and have proceeded on its merits. Sec. 4925 Manf. Dig.; Ib., secs. 4927–8. The error, if any, was waived by the failure to move for its correction. 26 Ark., 54; 31 Id., 411, 422; 32 Id., 562.

See also 13 Ark., 193; 14 Id., 50; 15 Id., 307; 17 Id., 340; 18 Id., 583; 2 Johns. Ch'y, 369; 4 Cold., 370; 5 Id., 240.

2.    The appropriate remedy was in equity, because a court of law was inadequate to afford the protection plaintiffs were entitled to. The constitution and laws of this State provide no remedy at law, save only his right to compensation for the land *before* the railroad takes it. Const., 1868, art. V., sec. 48; Const., 1874, art. XIII., sec. 9; Mansf. Dig., secs. 5447, 5458, 5467; 31 Ark., 494. Conceding that plaintiffs had the right to maintain an action at law, (2 Wood R. Law, sec. 245, p. 797; Mansf. Dig., secs. 2637–9, 2640, 2643; 28 Ark., 460; 41 Id., 202,) the question is whether the remedy afforded was such as they were entitled to. 33 Ark., 633; 13 Ark., 198; 43 Id., 111; Wood Ry. Law, Vol. 2, sec. 244, p. 794; 1 Rorer on R. R., p. 334; Kern on Inj. in Eq., ch. 17, sec. 10, p. 296; 40 Wis., 653; 127 Mass., 571; 30 Wis., 105; 12 Id.,

16; 20 A. and E. R. cases, 379; 22 Ib., 81; 64 Mo., 453; 6 Cold., 162; 7 Heisk., 518; 13 Lea, 669; Bish. Eq., sec. 37; 37 Ark., 164, 286. These cases show that when the remedy at law is inadequate, equity will relieve by injunction or other appropriate remedy.

3. DEFENDANTS CLAIM UNDER SECTIONS 15 AND 16 OF
ACT OF JANUARY 11, 1853.

It has been seen that the railroad company defendant does not claim ever to have purchased the property, on which it has put down its tracks, or which it is using in connection with its incline and transfer boat, and that the only title which it sets up is such as has resulted from its occupation of the premises, and secs. 15 and 16 of the charter of the old Memphis and Little Rock Railroad Company, granted by the General Assembly, and approved on the 11th of January, 1853. Acts of 1852–1853, pp. 133–135.

But sec. 15 was never complied with, the road having been completed long before the land in controversy was appropriated by defendant or its predecessors. Sec. 16 has no application and affords no protection. Especially so in view of art. V., sec. 48, Const. 1868, and art. XIII., sec. 9, Const. 1874. Sec. 16 could have no force after the adoption of the provisions of the Const. 1868 and 1874. But the Memphis and Little Rock Railway Company was a distinct corporation from the Memphis and Little Rock Railroad Company, and was organized under the general laws of Arkansas, and the present corporation, the Memphis and Little Rock Railroad Company, as reorganized, is not the same corporation created by act January, 1853; 112 U. S., 609. The present corporation does not antedate the present Constitution and is not entitled to any of the special privileges, immunities or exemptions contained in the original cha-

rter.   Art. 2, sec. 18, Const. 1874; 41 Ark., 202; 112 U. S., 609.

Besides, sec. 16 was unconstitutional.   3 Hump., 483; 2 Sneed, 104; Cooley Const. Lim., ch. XI., p. 351; 10 Yerger, 71–80; 13 Ark., 206–211.

4. EXTENT AND CHARACTER OF PLAINTIFF'S RIGHTS AND DEFENDANT'S WANT OF TITLE.

Sec. 5258, Rev. St., U. S., merely gave the consent of Congress to the operation of railroads between States, and gave no right to occupy land of others and appropriate their riparian rights.   5 Amend. Const. U. S.   Plaintiffs are entitled to the banks of the river and the use of the water in the river, as much so as they are to the land.   It is a valuable right, and they are injured as effectually by taking one as the other.   Tiedeman Lim. Pol. Powers, p. 397, sec. 121, d.; 13 Wall., 166; 10 Wall., 497; 1 Black., U. S. S. C., 23; 24 How., 41; 4 Mo., 343; 7 Wall., 272; 82 Mo., 367; 113 U. S., 567; 102 U. S., 180.   Plaintiffs also had the right of ferry.   Mansf. Dig., sec. 3309.   This is a valuable right as property, though they had no license.   20 Ark., 561; 25 Id., 26; 26 Id., 464; 44 Id., 184; 1 Black., 603; 3 Yerger, 386.

A railroad cannot acquire any right whatever in the land or riparian rights until compensation is paid; and one corporation succeeding another which has undertaken to take property in the exercise of the right of eminent domain, is equally bound with its predecessors to pay the compensation in all cases where it accepts and uses the property, and no compensation has been made for it.   18 Wis., 155; 37 Id., 319; 40 Id., 653; 127 Mass., 571; 59 Penn. St., 290; 37 Ark., 23; Ib., 164; 20 A. and E. R. Cases, 379; 44 Id., 258; 45 Id., 252; 28 Id., 465.

5. As to defendant's plea of occupation and the statute of limitations. This suit was brought July, 1880. The occupation of the old Memphis and Little Rock Railroad Company scarcely goes behind the year 1871, and as to the present company not beyond its organization, May 1, 1877. From the continual changes occurring by reason of caving, etc., it has occupied no particular locality connectedly or continuously long enough to bar plaintiffs. 47 Ark., 66; 11 Lea, 382; 24 Am. Law Reg., 432. Defendant had no color of title, and its occupancy would be limited to the land actually occupied continuously. 115 U. S., 407. The legislature has provided no time within which the owner of property taken by exercise of the right of eminent domain may sue to recover compensation, the theory being that compensation must be had prior to the condemnation. If the defendant is a corporation at all, it became one under the general laws of Arkansas, with all the restrictions imposed by the Constitution of 1874. 112 U. S., 609. It cannot tack its possession to that of its predecessors. Wood Lim., sec. 271, p. 579; Ib., sec. 256, p. 513. Defendant has never claimed to enter upon possession under any title, and the rule is that possession thus acquired is treated as held in subservience to the legal title, and however long continued can never ripen into an adverse title. Wood Lim., sec. 256, etc.; 115 U. S., *supra;* 2 Wall., 328. By constant changing of its tracks, etc., neither the defendant or its predecessors have occupied any portion of the land for a connected period of three years before suit. The possession must be actual, visible, continuous, notorious, distinct and hostile. Wood Lim., sec. 257; 22 Ark., 79; 33 Id., 150; 27 Id., 77; 24 Id., 371; 42 Id., 118; Wood Ry. Law, sec. 244, p. 791; 35 Ark., 541.

Most of the plaintiffs are married women and minors and are not barred even if the statute ran.    40 Ark., 108.

6.    The value of the land taken, or injured and the value of the riparian rights appropriated, is the measure of the plaintiffs' recovery.    They are entitled to the largest price they will bring for any purpose whatever.    98 U. S., 403; 41 Ark., 202; 10 Bush. (Ky.,) 382.

7.    The heirs and devisees of Winchester were the proper parties to sue.    5 Ark., 608, 629; 8 Ark., 9; 21 Id., 65; 31 Id., 576; 32 Id., 297; 34 Id., 391; 40 Id., 102; 42 Id., 25; 27 Id., 235; 30 Id., 775.    There are no debts to be paid, and the lands have long since been partitioned to the heirs and devisees, and are not needed for purposes of administration.

8.    The partition between Overton and Winchester's devises, by which they divided the lands and held the riparian rights in common, cannot be objected to by defendants.    It docs not concern them.    Similar partitions have been made and sanctioned.    1 Washb. R. P., p. 429, sec. 7, par. 10; 1 Hoffm. Chy., 506.    The decree making partition binds all parties and third parties owning no interest.    58 Barb., 58; Freeman on Judg., sec. 304.    That decree cannot be inquired into collaterally.    102 U. S., 461; 22 How., 1.    See, also, Mansf. Dig., sec. 4802.

*U. M. & G. B. Rose*, for appellees.

The original complaint by the devisees of Winchester was for compensation for taking their lands for railroad purposes. The amended complaint in which Overton is joined as plaintiff is no longer for the taking of the land, but is for the breach of a personal contract to pay for the rent of a ferry franchise granted by the State of Tennessee.    The land had been partitioned in severalty and Overton and Winchester's

devisees could not join in a suit to recover damages for entry upon their several tracts.   27 Hun., 582.   This was a misjoinder of parties.

The complaint states that the land was very valuable when it was filed; the question of value is to be considered with regard to the time of the taking of the land, and as no such value is set forth, the complaint shows no cause of action. 70 Ala., 227.

The railroad was built on the land in 1858 or 1859, and yet counsel begin their arguments by quoting the constitution of 1868, as showing the power the railroad had in regard to taking possession of the land.

The plaintiffs' remedy was adequate at law.   2 Wood on Ry. Law, sec. 245, p. 797.   No new legislative remedy was required as the old ones were amply sufficient.   70 Ala., 227; 29 Minn., 256; 54 Wis., 136.

It is said repeated trespasses afford a ground of equitable jurisdiction.   But no trespasses are shown.   The complaint states the railroad company went on the land by consent, and the only complaint is cutting timber and removing earth, and there is no proof of this.

The suit was simply one for damages and could not be brought in equity.   Nor was there any ground for injunction, since the statute gave express power to enter on the land to build the road; and, moreover, the plaintiffs state that consent thereto was granted.

The entry under the statute gave to the railroad company a right to the strip of land 200 feet wide.   *Prather v. W. U. Tel. Co.*, 84 Ind., 501.

Where one voluntarily consents to the occupation of land by a railroad company, he cannot afterwards recover damages for the use of it.   *Texas Ry. Co. v. Sutor*, 59 Texas, 29.   Nor can

he recall his grant after the road has been built. *Rio Grande Ry. Co. v. Brownsville*, 45 Id., 88. And the failure of the company to comply with the terms on which the grant was made will not operate as a forfeiture of a right of way once granted. In such case the remedy is by a suit for damages for breach of the contract. *Texas Ry. Co. v. Sutor, ubi sup.* Even a verbal concession of a right of way is sufficient. *Clement v. Durgin*, 5 Greenl., 9; *Currie v. Natchez Ry. Co.*, 61 Miss., 725; *Louisville Ry. Co. v. Thompson*, 18 B. Mon., 736; *Marble v. Whitney*, 28 N. Y., 298. Particularly is this the case where the statute, as here, gives a right of entry. *Noyes v. Chapin*, 6 Wend., 461. And consent will be implied from long acquiescence. *Cottrill v. Myrick*, 22 Me., 222.

Where there is no contract made, and the land owner merely permits the railway company to build its road on his land, he cannot afterwards enjoin its operations. *St. Julian v. Morgan's Ry. Co.*, 35 La. An., 924; *Bourdier v. Morgan's Ry. Co.*, Id., 947. Where a land owner agrees that a railway company may build its road on his land he cannot afterwards interfere with its possession. *Pryzbylowicz v. Missouri Ry. Co.*, 3 McCrary, 587.

There is no evidence that the railroad company ever built any part of its road or occupied any land belonging either to Winchester or Overton outside of the tract conceded by them to it. But if from the overflows, or other inevitable causes, it was compelled to make slight changes of track from time to time, the consent of the land owner will be implied, unless upon proof that they objected at the time that the changes were made, or within a reasonable time thereafter. *Hosher v. Kansas City Ry. Co.*, 60 Mo., 329.

Confessedly if ever there had been any claim for damages

on the part of the plaintiffs, it was barred by limitations many years before the suit was brought. The charter of the Memphis and Little Rock Railroad was approved January 11, 1853. Acts 1852, p., 130.

The constitution then in force did not require prepayment as a prerequisite of the right of condemnation of lands for public purposes. That part of the charter then authorizing the company to enter on lands for the purpose of locating and building the road was not in violation of any constitutional provision and was perfectly valid. *Carolina Ry. Co. v. McCaskill*, 94 N. C., 746; *Praether v. W. U. Tel. Co.*, 89 Ind., 501.

The sixteenth section of the charter gave the company the right to enter on lands, and to appropriate to its use 200 feet of land, the middle of the road to be in the middle of the land thus to be taken; and it limited the remedy of the owner for redress, in case of his non-acquiescence, to a period of five years next after that part of the road built on his land might be finished. If the land owners did not invoke a remedy within the reasonable period named in the statute, this remedy was lost. *Praether v. W. U. Tel. Co.*, *ubi sup.*; *Mills on Eminent Domain*, sec. 340.

As to the seven years' statute, it is said that seven years did not intervene between the time of the last change of track and the commencement of this suit. We have already shown that there is no proof that this change extended to land beyond the limits of two hundred feet allowed by the charter, or beyond the limits of the concession made by Winchester and Overton, and that plaintiffs have proved by Claybrook that the change was made by consent of the landowners. We now have to say that the testimony fails to show that any change was made within the seven years next before the commencement of this suit.

Of course the plaintiffs must prove affirmatively that the action was brought within the statutory period. *Taylor v. Spears*, 6 Ark., 382; *Guthrie v. Field*, 21 Id., 38; *McNeill v. Garland*, 27 Id., 344; *Ouachita County v. Tufts*, 43 Id., 139. This suit was brought July 26, 1880. Organ says that the last change of track was made in 1873 or 1874. Richards says that the change was made in 1873.

The affirmative of the issue is, therefore, not sustained.

But in point of fact the seven years' statute had nothing to do with the question. The true period of limitation was five years, as prescribed in the charter. In the absence of that the period would be three years—the period of limitations for actions of trespass. Mansf. Dig., sec. 4477.

We have seen that the damages in such cases may be waived by parol. Therefore the question is not one involving the title to land. Where the statute gives the company the right to enter on the land the demand for damages is not an interest in the land, but only a pecuniary claim. *Fuller v. County Com'r.*, 15 Pick., 81.

Counsel for appellant seek to take the case out of the statute as to a few of the plaintiffs, on the ground that some of the Winchester devisees were married women when the land was taken, and that they left husbands surviving, who were tenants by curtesy, and that these have died within seven years next before the commencement of the suit. This claim may go along with the rest. We had never heard before that a husband had an estate in curtesy in the choses in action of his deceased wife. We are always willing however to learn. There are only two grounds of action set up in the substituted complaint, viz: damage to the land by needless excavation for the purpose of getting earth to use elsewhere, and damage to riparian rights. They both neces-

Organ v. Memphis and Little Rock Railroad Company.

sarily fail, because there is not a particle of testimony to sustain either.

As to damages to the land, it is not stated that the admitted contract under which the company entered contained any limitation as to the use of earth or timber. It must then be presumed, especially after twenty years' acquiescence, that the company had the right to use them; for the grant of the land included the timber growing on it, and certainly it did not exclude the earth. *Norris v. Vermont Ry. Co.*, 28 Vt., 99; *In re Utica Ry. Co.*, 56 Barb., 456.

The law is well settled that after lands are partitioned, or conveyed in separate parcels, riparian rights cannot remain in common; because these are a part of the land itself, and each parcel of land bounded by water must necessarily have its own riparian rights attached to it as an essential part of its very being. *Linthicum v. Ray.*, 9 Wall., 241; *Haynes v. Wells*, 26 Ark., 464.

On the argument in the court below it was contended by counsel for Overton that the running of the railway ferryboat for the sole purpose of carrying the cars of the railway company, and freight and passengers in those cars, was an infringement of the ferry right of the plaintiffs, and that damages should be paid to them for that infringement; but the law is perfectly well settled that a railway ferryboat which is run for the purpose of carrying cars, passengers and freight for railway purposes only, and to connect lines of railway on either side of the river, is not an infringement of an ordinary ferry franchise. *Bridge Proprietors v. Hoboken Co.*, 1 Wall., 149; Rev. Stat. U. S., sec. 5258; *Mayor v. New England Transfer Co.*, 14 Blatch., 159; *Railroad Co. v. Richmond*, 19 Wall., 588; *The Hazel Kirke*, 25 Fed. Rep., 601; *Piatt v. Covington Bridge Co.*, 8 Bush., 31; *Lake v. Virginia R.*

*R. Co.*, 7 Nev., 294; *Bridge Co. v. Hoboken Land Co.*, 13 N. J. Eq., 81.

The statute of limitations affects the pretended Greenlaw claim, as well as the rest of the claims made by plaintiffs. The statute was pleaded in various ways; but it need not have been pleaded at all, as in equity the statute bar destroys the equity of the complaint. *Riley v. Norman*, 39 Ark., 158. As long as there is an administration pending it must be presumed, in the absence of a contrary showing, that it is kept open for the payment of debts; and the administrator alone can sue, either on a contract or for trespass on lands. *Culberhouse v. Shirey*, 42 Ark., 25.

The statute of limitations ran against Vance as executor until he was made a party in 1886. *Lagow v. Neilson*, 10 Ind., 183. The executor being barred, the heirs are barred also. Hill on Trustees, 267, 403, 504; 2 Perry on Trusts, secs. 858, 859; *Meeks v. Olihuts*, 100 U. S., 569: *Coleman v. Walker*, 3 Metc. (Ky.,) 65; *Rosson v. Anderson*, 9 B. Mon., 423; *Couch v. Couch*, 9 Id., 169; *Danrall v. Adams*, 13 Id., 279; *Edward v. Woolfolk*, 17 Id., 381; *Williams v. Otey*, 8 Humph., 563; *Woolridge v. Planter's Bank*, 1 Sneed, 297. The Act June 22, 1855, Acts 1855, p., 238, was a general one. It was recognized in 31 Ark., 504, and has never been repealed.

A land-owner who stands by and acquiesces until a railroad company has expended money, and constructed its track across his land, so that the track at that point has become part of its line, cannot maintain injunction against a corporation which has succeeded to its right and franchises, by purchase at foreclosure sale, without notice of any claim or objection on the part of such land owner. *Midland Ry. Co. v. Smith*, (Ind.,) 15 N. W. Rep., 256; *Evansville Ry. Co. v. Nye*, (Ind.,) Id., 261.

Organ v. Memphis and Little Rock Railroad Company.

BATTLE, J.

On the 3rd day of August, 1880, the appellants commenced this action against appellee in the Crittenden circuit court, on its equity side. They allege in their complaint that Marcus B. Winchester and John Overton jointly owned the north half of Spanish grant, No. 2337, in township 6 north, ranges 9 and 10 east, and fronting on the west bank of the Mississippi river, in Crittenden county, Arkansas, just opposite the upper part of the city of Memphis; that Winchester died in the year 1856, leaving a last will and testament; that the land had been divided between Overton and the devisees of Winchester and their representatives, to whom the interest of Winchester belongs; and that the riparian rights pertaining to the land, by consent, were not divided, but remain the joint property of appellants. They further allege, that about the 8th day of November, 1872; the Memphis & Little Rock Railroad Company, without their consent, entered upon the land and constructed its railroad across the entire tract, until it reached the Mississippi river; that in constructing its railroad the company excavated and filled and otherwise changed the face of the tract, and cut timber, and took earth, therefrom, and used the same, and had thereby greatly impaired the use and reduced the value of the land; and that the place where the tract extends to the river is on land set apart, in the division, to Overton. They further state, that on the 8th of May, 1872, one Greenlaw, who was the manager, superintendent, or chief executive officer of the Memphis & Little Rock Railroad Company, leased from Overton his undivided one-half interest in the ferry privilege belonging to the land, so far only as to allow Greenlaw to run a transfer boat between the eastern terminus of the railroad and Memphis, for the purpose of trans-

ferring freight and passenger cars, with their freight and cargoes. That as soon as he obtained the lease he began running a transfer boat under it, transferring the cars of the railroad company, with their contents, to and from the Tennessee and Arkansas shores, the point of landing on the Arkansas shore being at the place where the railroad touched the river on the land of appellants; and that the railroad company had constructed and maintained an inclined railway, leading from the top of the bank of the river into the river, and other appurtenances for transferring cars to and from the transfer boats. That the Memphis & Little Rock Railroad Company and appellee had constructed side tracks, buildings, structures and appurtenances, both on the banks and along the margin of the river. That the side tracks ran up and down the river front, the one way upon the land set apart to Overton, and the other upon the land allotted in the division to the devisees and representatives of Winchester, for several hundred yards. That the railroad companies had moored and anchored a wharf boat in the river in front of the land of appellants, and had securely fastened the same to the shore; and had constructed or located an elevator on the wharf-boat for the handling of the freight transported by appellee; and had built along the margin of the river and upon its bank a platform to be used in connection with the wharf-boat and elevator, for the loading and unloading of cars. That Greenlaw continued to run the transfer boat for several years, and so long as he remained the managing officer of the railroad company. That afterwards and when he had ceased to be the managing officer of the Memphis & Little Rock Railroad Company the transfer boat, and his right to run the same, were transferred to the last mentioned company, which continued to run it, transporting thereon its

cars, with their freight, cargoes and passengers, between the Arkansas and Tennessee shores, to and fro, until it was succeeded by appellee, which, claiming it had acquired all the property of that company, and had succeeded to its rights, had since then been using and operating its railroad upon and across the lands of appellants and the side tracks, switches and buildings thereon, and had continued to run the transfer boat, and was then running it in the same manner it had been run by its predecessors. That neither the Memphis & Little Rock Railroad Company, nor the appellee, nor any one else, had ever caused the land, or any part of it, to be lawfully condemned, for the uses for which it had been appropriated, or acquired the right to go upon, or pass over, or use the land, or the riparian rights thereto belonging, or paid anything whatever for the use of the riparian rights or the land, or the rights and appurtenances belonging thereto, or for damages, or the timber and earth taken therefrom, or for incidental injuries to the land. The prayer of the complaint was, that an injunction be issued restraining appellee from further occupying or using the land or any part of it, and the riparian rights and privileges thereto belonging, and from running the transfer boat, perpetually, or until it pay just compensation therefor to be fixed by the court; and that the amount due appellants on all the grounds and accounts set out in their complaint, from the appellee and its predecessor, might be ascertained by proper accounts; and that appellants have a decree therefor and execution of such decree, and all other just, proper and general relief.

Appellee answered the complaint and demurred thereto, first, because the appellants had not the legal capacity to sue on account of the matters stated therein, and second, because it did not state facts sufficient to constitute a cause of action;

denied it was liable to appellants in any manner on account of what is alleged therein; stated the reasons why it was not liable and pleaded the statute of limitations in bar of the right to maintain the action.

Depositions of witnesses and agreements of the parties as to facts were filed and submitted to the court. From this evidence we find the following facts: The Memphis & Little Rock Railroad Company was chartered by an act of the general assembly of this State, approved January 11, 1853. The company was formed soon after the act incorporating it was passed. On the 1st of May, 1860, it conveyed to Tate and others, its charter, franchises, road, road-bed, right of way and all its other property, in trust, to secure the payment of its certain bonds mentioned in the conveyance, with power to sell the property on default by the company. Afterwards on the 1st of March, 1871, it executed a second deed of trust, conveying all its property and franchises to Henry F. Vail, in trust for the holders of bonds secured thereby, subject to the first deed of trust. Default having been made in the payments due on the bonds secured by the latter deed of trust, Vail, the trustee, in execution of the power vested in him, sold and conveyed the property described therein, on the 17th of March, 1873, to Stillman Witt. Afterwards, on the 29th of March, 1873, Witt made a declaration showing for whom he had purchased, and that he held in trust for them. On the 9th of December following, the grantor and grantees in the declaration of trust so made by Witt, organized a company called the Memphis & Little Rock Railway Company, to which the property sold by Vail was conveyed. This railway company issued its bonds, and to secure the same, by a deed of trust, conveyed all the property, privileges and franchises so acquired by it to trus-

tees, in trust for its bondholders. Both of these companies made default in the payments due on the bonds secured by the deeds of trust executed by them. Afterwarns a suit in equity was instituted by the trustees against the two companies, to foreclose these deeds of trust, in which a final decree was rendered ordering a sale of the property described in the same; and a sale thereof was made and confirmed, and a conveyance of the same was made to certain persons in trust for the holders of certain bonds. On April 28, 1877, the holders of these bonds formed the appellee, the Memphis & Little Rock Railroad Company, as reorganized. Afterwards, on the 30th day of April, 1877, the last named trustees conveyed the charter, franchises and property vested in them to the appellee.

It is conceded that the tract of land described in the complaint was acquired by Overton and Winchester as early as the year 1846, and that they held possession of it jointly, to the death of Winchester; that Winchester died in 1856, leaving a will; that William Vance was appointed and qualfied as the executor of such will; that Overton and the executor and devisees of Winchester held joint possession after that time and until the partition mentioned in the complaint, which was made in the manner stated in the complaint at the April term, 1873, of the circuit court of Crittenden county; and that since such partition Overton and Winchester's devisees and heirs have held possession in severalty of the land set apart to them, and, jointly, of the riparian rights belonging to the whole tract of land, except in so far as the appellee and its predecessors, the Memphis & Little Rock Railroad Company and the Memphis & Little Rock Railway Company, have held and possessed parts of the same; and that Vance has never been discharged, but is still acting as executor of Winchester's will.

On the 23rd of May, 1856, the Memphis & Hopefield Real Estate Stock Association, in consideration that the Memphis & Little Rock Railroad Company would locate its eastern terminus and depot on the land given, gave and conveyed to it twenty acres of ground lying four hundred and twenty-three feet west of the Mississippi river, opposite Memphis, in what is known as the town site of Hopefield, in Crittenden county in this State. The Memphis & Hopefield Real Estate Stock Association agreed to permit the railroad company to use the land between the river and the twenty acres for the purpose of discharging and receiving freight, passengers and the like, but reserved to itself the right of landing steamboats, ferryboats and other water crafts on or at the same. Under this agreement the railroad company located its eastern terminus and built its depot on this twenty acres of ground in the year 1857 or 1858. Afterwards, a sand bar having formed in the river in front of Hopefield, and prevented the landing of boats near the terminus of the railroad, the company constructed a track up the bank of the river from its main track in Hopefield to a point above and on the land of appellants, at or near a place on the river where the water was deep and there was a good landing for steamboats, where it built a depot. The track running up the bank of the river was used until 1859, when it was taken up and the track was changed and laid through appellants' land, in the locality of the track used by the appellee when this suit was begun. This last mentioned track was used until the war came on. It was then torn up by the military authorities of the United States. After the war the railroad company again laid iron on the track running up the bank of the river to the depot before mentioned, which was used until about the year 1873 or 1874, when the iron on it was taken up

and put back by the railroad company on the track running through the land of appellants, which was used when this suit was commenced, and afterwards until the land caved into the river. At the same time the iron was moved the railroad abandoned the land covered by the track running up the bank of the river to the owner. The depot on the land, however, was continuously used from about the year 1866 by the appellee and its predecessors until the land on which it stood caved into the river.

It is conceded that tracks and switches were laid on appellants' land as stated in their complaint. The switches were not placed until about the year 1873 or 1874, and were changed from time to time as the railroad company saw proper. About the 8th of November, 1872, William B. Greenlaw, who was the managing officer of the Memphis & Little Rock Railroad Company, leased for one year from John Overton, one of the appellants, his one-half interest in the right to run a transfer boat across the river from the land of appellants, for the purpose of transferring the cars of railroad companies to and from the Tennessee shore. Thereupon an inclined railway was built from the tracks of the railroad to the river and Greenlaw ran a transfer boat in connection with it, under his lease, and received from it cars and transferred them to the Tennessee side, and received cars on the Tennessee bank and transferred them to the Arkansas shore and discharged them on the inclined railway. The inclined railway in existence and use at the commencement of this suit was built in 1874. The lease was renewed from year to year, and the boat continued to run under it until Greenlaw transferred his right to the Memphis & Little Rock Railway Company, under an arrangement made about the 8th of February, 1875, and then the railway company ran

the boat just as Greenlaw had done, until appellee succeeded to its rights, and since appellee so succeeded it has run a transfer boat in the same way. The evidence, however, does not show that either one of them ever secured a lease. Appellee commenced operating the railroad and transfer boat about the 1st of May, 1877.

Since the commencement of this action the bank of the Mississippi river in front of the land has caved to such an extent that not one of the railroad tracks, nor one of the buildings or structures of any kind of appellee remains now where they were then. But the locality on which every track and every building and structure on the land claimed by the appellants was then situated is now a part of the bed of the Mississippi river. As the banks caved and washed into the river appellee, since the year 1881, has moved back its tracks and buildings so as to keep them on the land adjacent to the river bank, but outside the caving.

It is further conceded that no application has ever been made to the court by parties owning the land in question and claiming the riparian rights pertaining thereto, for compensation therefor; and that no compensation has ever been paid to appellants, or any one of them, or any of their devisors or ancestors for the land taken and appropriated, or for the use of the inclined railway, or the land upon which it is built, or for running the transfer boat; and that the appellee and its predecessors have never made application to the courts for the condemnation of the land taken or used by them, or for the condemnation of the riparian rights they have appropriated; nor does the evidence show that the appellee or its predecessors ever procured the right of way over appellants' land by their, or their devisors', or ancestors', or grantors' express agreement or consent.

Organ v. Memphis and Little Rock Railroad Company.

Agreements in writing made and entered into by the parties to the action were filed, by which it was agreed that each of them should have the benefit of the foregoing facts as to the caving of the banks of the Mississippi river and the removal of appellee's tracks and buildings, and that no amendment of the pleadings of either party should be required in order to present them, and that the same relief should be granted to either party as if the facts were formally set out in his or their pleadings; and that testimony as to damages of all kinds, including damages for taking timber, making excavations, as well as for road-bed taken and the riparian rights claimed, and all testimony of like character, might be deferred until the hearing, on the merits, of the rights of the parties; and that the testimony might be thereafter taken, if desired, upon a reference to a master; and that all questions of law were reserved for argument and adjudication—each party being at liberty then to claim any legal rights that belong to such party, or deny the legal rights set up by the other.

Upon a final hearing the complaint was dismissed by the court without prejudice to the appellants' bringing an action at law upon the same cause of action set up therein; and plaintiffs appealed.

As to the course which the courts should pursue in cases where the plaintiffs have adopted the wrong proceeding and no motion to correct the error has been made, the decisions of this court are not entirely consistent. In *Phelps v. Jackson*, 27 Ark., 591, it is said: "It is an old and familiar rule of chancery practice that, if the complainant has a plain and ample remedy in a court of law, his bill cannot be entertained but must be dismissed for the want of equity. The code, however, has changed this practice, and allows a plaintiff

who has committed an error as to the kind of proceedings adopted, to change them and transfer the action to the proper docket; but this change and transfer must be done by the plaintiff. If the error is discovered before the answer is filed, it may be done without motion; if afterwards, on motion, in court. The transcript in this case does not show that the plaintiffs in the court below made any effort to have the proceedings changed. It is within the province of the court to make the transfer, but it is not bound to exercise this discretion, unless asked to do so by the party desiring it. When the bill has been examined, and judgment pronounced of 'no equity in it,' unless the party complaining makes some effort to have the proceeding changed to the proper forum, it is the duty of the chancellor to dismiss the bill.''

The same rule of practice was laid down in *Berry v. Hardin*, 28 Ark., 458; *Hendricks v. Keese*, 32 Ark., 714; *Crawford v. Carson*, 35 Ark., 583, and in *Little Rock & Fort Smith R. R. Co., v. Perry*, 37 Ark., 164.

In *Apperson v. Moore*, 30 Ark., 56, which was a suit in equity on the mortgage of a future crop, executed prior to the act of February 11th, 1875, which made mortgages on crops to be planted valid, it was held that the lien of a mortgage on an unplanted crop attaches, in equity, as soon as the subject of the mortgage comes into existence, and could be enforced, in a proceeding to foreclose, against the mortgagor and those holding under him with record notice. In *Tomlinson v. Greenfield*, 31 Ark., 557, which was an action on the law side of the trial court, it was held, that a mortgage on an unplanted crop, executed before the act of February 11th, 1875, became a law, was void.

*Miller v. Nieman*, 27 Ark., 233; *Chapline v. Holmes*, Ib., 414; *Sale v. McLean*, 29 Ark., 612; *Crane v. Randolph*,

30 Ark., 579; *Lawrence v. Zimpleman*, 37 Ark., 643; *Bryan v. Winburn*, 43 Ark., 32, and *Matthews v. Marks*, 44 Ark., 436, were actions to quiet title to lands. In these cases it was held that, in order to maintain such actions, the plaintiff must show he is in possession, or that the land is wild or unimproved, or his title is an equitable one, and that if he fails to do so his action should be dismissed. "For," says the court, "when the title is a purely legal one and the defendant is in possession, the remedy at law is plain, adequate and complete, and an action of ejectment cannot be maintained under the guise of a bill in chancery." In these cases, however, the relief sought was purely equitable and the plaintiffs failed to show the condition on which it could be granted.

In *Talbot v. Wilkins*, 31 Ark., 411; *Moss v. Adams*, 32 Ark., 562; *Hammond v. Harper*, 39 Ark., 248; *Dorsey County v. Whitehead*, 47 Ark., 208, and *Catchings v. Harcrow*, 49 Ark., 20, it was held that an error as to the kind of proceedings adopted is not a good cause for dismissal, but only for a transfer of the cause to the proper docket; and that where no motion is made to correct the error, the court may either transfer on its own motion, or may proceed to a trial upon its merits.

The latter rule is more in harmony with the spirit and letter of the Code of Practice in Civil Cases. The code abolished all forms of actions, and provides that there shall be but one form of action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be called a civil action; and that the proceedings in a civil action may be of two kinds: First, at law, and second, in equity; that the plaintiff may prosecute his action by equitable proceedings in all cases where courts

1. PLEADING AND PRACTICE: Error in adopting proceedings: Transfer to proper docket.

of chancery, before the adoption of the code, had jurisdiction, and must so proceed in all cases where such jurisdiction was exclusive; and that in all other cases the plaintiff must prosecute his action by proceedings at law. It further provides: "An error of the plaintiff as to the kind of proceedings adopted *shall not cause the abatement or dismissal of the action*, but merely a change in the proper proceedings by an amendment in the pleadings and a transfer of the action to the proper docket." Such error may be corrected at the instance of either party, but is waived by a failure to move for its correction. Mansfield's Digest, secs. 4914-4928.. In this case the action was dismissed, because, in the opinion of the court, the remedy of the plaintiffs was at law. If legal and equitable remedies were required to be administered in separate forms of action this ruling would be correct. But under the code there is but one form of action for all kinds of civil remedies. All that the plaintiff is required to do in the statement of his cause of action is to state in his complaint facts to show that he is entitled to the relief demanded; and it is the duty of the court to treat his complaint as valid without stopping to speculate upon the name to be given to his action. If he states facts which entitle him to relief, either legal or equitable, it is not demurrable on the ground that it does not state facts sufficient to constitute a cause of action. If an error in the kind of proceedings adopted be committed, it should not be dismissed on that account, but the issue in the action should be tried according to the principles involved, and the relief he is entitled to should be granted without regard to such error. *Trulock v. Taylor*, 26 Ark., 54.

**2. SAME: Misjoinder: Waiver.** It is said that there is a misjoinder of causes of action in the complaint in this cause. This is true. But the defend-

Organ v. Memphis and Little Rock Railroad Company.

ant failed to take advantage of it before defence, and thereby waived it. The code provides that the plaintiff may strike from his complaint any cause of action, at any time before the final submission of the case to the jury, or to the court, where the trial is by the court, but the defendant must take advantage of a misjoinder of causes of action before the defence is made, and failing to do so he cannot afterward take advantage of it. Mansf. Dig., secs. 5015, 5016, 5017; *Terry v. Rosell*, 32 Ark., 495; *Riley v. Norman*, 39 Ark., 158; *Sale v. Crutchfield*, 8 Bush., 636, 646.

Appellee insists that Vance, as executor of Winchester, alone had the right to bring an action for compensation or damages on account of the taking and appropriation of the land formerly owned by Winchester. But the complaint and the evidence show that Winchester died in 1856, and that thereafter Overton and the executor and devisees of Winchester held joint possession of the land in question until 1873, when it was divided and the heirs and devisees of Winchester thereafter held possession of the part of land set apart as Winchester's portion thereof. This suit was commenced in 1880. The taking and appropriation occurred seventeen or eighteen years, and the suit was commenced about twenty-four years after Winchester's death. According to the repeated decisions of this court the heirs and devisees of Winchester, under the circumstances stated, had the right to sue. *Mays v. Rogers*, 37 Ark., 155; *Stewart v. Smiley*, 46 Ark., 373; *Graves v. Pinchback*, 47 Ark., 470.

In using appellants' land as a right of way for a railroad the company taking it acted without the authority of law. It is conceded that the land for which appellants ask for compensation in their complaint was first taken and appropriated

3. SAME: Parties plaintiff: Action for damages to land of decedent.

to the use of the railroad company in 1859, and was afterwards abandoned, and was again taken and appropriated in 1873 or 1874. It is further conceded that no proceedings were ever instituted to condemn it for a right of way, and that no compensation has ever been made for it. There is no evidence that appellee, or either of its predecessors, ever obtained it by agreement from its owners. So it is clear that the company which appropriated it to its use in 1873 or 1874 acquired no right to it. But it is not clear which appropriated it in that year, for all the property of the Memphis and Little Rock Railroad Company was sold and conveyed on the 17th of March, 1873, and the Memphis and Little Rock Railway Company was organized on the 6th of December following, and became the owner of the railroad and other property of the Memphis and Little Rock Railroad Company. But be this as it may, if the first company appropriated it, the second acquired no better title or right to it than the first had. The second could only take what its predecessor had a right to convey; it took subject to the claims of the owners, and subject to their right to enforce them in the manner prescribed by law.

4. RAILROAD COMPANIES: Appropriating land for right of way.     But it is contended that the charter granted by the legislature on the 11th of January, 1853, under which the original company was organized, gave to the company, to which it was granted, the right to enter on lands, and to appropriate to its use for right of way, one hundred feet of land on each side of the center of its road, and limited the remedy of the owner for redress, in case of his non-acquiescence, to a period of five years next after the part of the road built on his land was finished. It is true that the charter gave to the owner the right to apply for an assessment of damages and limited it to the period of five years after the road was built

on his land.   But the legislature could not authorize the company to take private property for public use without first providing for just compensation to be made to the owner. Moreover, the first company never secured the right of way on the land in question, and its successors could not do so under its charter.   The manner in which they could do so was prescribed by the constitutions and laws under which they were organized, which prohibited them from appropriating any property or right of way to their own use until full compensation shall be first made to the owner in money, or secured to him by a deposit in money.   *Cairo & Fulton R. R. Co. v. Turner*, 31 Ark., 494; *Martin, ex parte*, 13 Ark., 206; *Little Rock & Fort Smith Ry. Co. v. Mc-Gehee*, 41 Ark., 204; *Memphis & Little Rock R. R. Co. v. Railroad Commissioners*, 112 U. S., 609; *Memphis & Little Rock R. R. Co. v. Berry*, 41 Ark., 436; *Arkansas Midland R. R. Co. v. Berry*, 44 Ark., 17.

It is further contended that so much of the act entitled 5. SAME.
Same: Acts
"An act prescribing the mode of procedure in obtaining the 1855 and 1873
right of way for railroads in this State," approved 22d of January, 1855, as authorizes the owner of lands taken for right of way for a railroad to make application for the assessment of damages, and limits the time for him to apply to the period of two years after the road is finished over his land, with exceptions in favor of persons laboring under disabilities, still remains in force; and that appellants are confined to the remedy thereby prescribed.   But this is not true. On the 28th of April, 1873, the legislature passed an act "for the better regulation and efficiency of railroad companies," in which a mode of ascertaining damages, and compensating land owners for right of way is provided.   In the latter act the legislature took up and legislated upon the

whole subject embraced in the act of 1855, and evidently intended that the act of 1873 should be a substitute for the former act. The manifest object of the act of 1873 was to carry into effect the requirements of the constitution of 1868 upon the subject, and, in lieu of so much of the act of 1855 as provides that the owner might apply for an assessment of damages, to prohibit railroad companies from appropriating land to their use as a right of way, without the consent of the owner until full compensation therefor should be first made, or secured to him by a deposit of money. It is a complete substitute for the act of 1855, and evidently was' intended to, and does, repeal it. *Cairo & Fulton R. R. Co. v. Trout*, 32 Ark., 27; *Little Rock & Fort Smith Ry. Co. v. McGehee*, 41 Ark., 204; *Bentonville Railroad v. Baker*, 45 Ark., 252.

6. SAME: Same: Injunction to prevent wrongful appropriation. The statutes of this State provide no remedy for the owner to obtain damages for land taken in the construction of railways. The railroad company alone can institute proceedings to have the land condemned to its use and the damages therefor assessed. But the owner is not without an adequate remedy. If a company proceeds to take his land without first making just compensation a court of equity will interfere for his protection. It will enjoin the company from taking possession, until proper compensation is ascertained and paid; and will restrain the continuous use of land by the operating a railway over it, on his timely application, ''when the company has not taken the necessary proceedings to acquire title under the laws of the State, and when it has no grant from the owner and no right to the occupancy of the land.'' High on Injunctions, [2d Ed.] sec. 625, and cases cited; 2 Wood Railway Law, p. 794; Lewis on Eminent Domain, secs. 631–634, and cases cited; Pierce on

Railroads, p. 230; 1 Rorer on Railroads, p. 334; *Cairo and Fulton R. R. Co. v. Turner*, 31 Ark., 506; *Niemeyer v. Little Rock Junction Ry.*, 43 Ark., 119.

But the application for injunctive relief must be seasonably made. As said in *Midland Railway Company v. Smith*, 15 North Eastern Reporter, 257: "A land owner who 'stands by' and acquiesces until a railroad company has expended its money, and constructed its track across his land, so that the track at that point becomes a part of its line, will not thereafter be entitled to invoke the aid of a court of equity in arresting an enterprise in which the public, as well as the railroad company, have an interest. Upon considerations of public policy, as well as recognized principles of justice, courts of equity will refuse to interfere after a railroad corporation has entered upon land with the consent or by the license of the owner, and has expended money in the construction of its road upon the strength of such license or consent; or where the land owner has acquiesced in the use of his land by the railroad company until the public interest or convenience has become involved." High on Injunctions, sec. 643, and cases cited; *Hentz v. Long Island R. R. Co.*, 13 Barb., 655; *Erie R. R. Co. v. D., L. & W. and M. & E. R. R. Co.*, 21 N. J. Eq., 289; *Goodwin v. Cincinnati and Whitewater Canal Co.*, 18 Ohio St., 169; *Bassett v. Company*, 47 N. H., 439; *Traphagen v. Mayor and Aldermen of Jersey City*, 29 N. J. Eq., 206.

The owner may not be entitled to injunctive relief, but, nevertheless, entitled to compensation for the land taken from him and appropriated by the railway company. The right to the property taken can only be acquired by the company by purchase, by adverse possession for the statutory period, or by statutory proceedings for the assessment of damages.

7. SAME:
Same: Claim to compensation: Enforcement against land.

The company can only acquire it through the right of eminent domain by making just compensation. Until then it remains in the original owner. The power to take and the obligation to indemnify for the taking are inseparable. But the owner may waive formal condemnation proceedings, and all formal modes of transfer, and elect to regard the action of the railroad company as taking the land under the right of eminent domain, and demand and recover just compensation. *United States v. Great Falls Mfg. Co.*, 112 U. S., 656; *Drury v. Midland R. R. Co.*, 127 Mass., 576; *Cohen v. The St. Louis, Fort Scott & Wichita R. R. Co.*, 34 Kan., 158; *Western Penn. R. R. Co. v. Johnston*, 59 Penn. St., 294; *Goodlin v. C. & W. Carroll Co.*, 18 Ohio St., 180; Mills on Eminent Domain, [2d Ed.] secs. 140–144.

The title acquired by a railroad company in land legally appropriated for right of way and paid for is denominated an easement, but it is an easement in the nature of a fee, and, under the statutes of this State, is practically a title to the fee in the land taken. Mansfield's Digest, sec. 5463; 2 Wood Railway Law, 770. In the assessment of damages the owner is entitled to the full value of his land. When, therefore, he elects to demand compensation for land necessarily used in the construction of a railroad he assumes a relation to the railroad company like unto that of a vendor who sells his land on time and retains the title and agrees to convey it when the purchase money is paid. He does not part with the title until the compensation is made. The amount to be paid for the land used as a right of way, though called damages or compensation, is in its nature the price of the land taken. If it had been sold to an individual on time the vendor would have a lien on it for the unpaid purchase money. Equity in that case would treat the unpaid purchase money as

a lien on the land sold and enforce it, on the ground it would be unconscionable to allow the vendee to retain the property voluntarily sold to him and not pay its price.  This doctrine applies with greater force when the property is seized in *in vitum* by a corporation.  It is strengthened by that ''imperious constitutional mandate,'' which prohibits property from being taken without just compensation being first made.  If equity, contrary to its general rule, when property is being taken by a railroad corporation without making just compensation, will interfere to protect him, it certainly would and does not withhold its hand in the enforcement of his claim upon the property for the unpaid purchase price, when his right to pay for it as a constitutional condition precedent to its becoming the property of the corporation still exists in all its original vigor.  It is obvious that a court of equity will, in a proper proceeding, so long as the original owner holds the title in the soil, enforce the claim of the owner against the property taken as it does a vendor's lien.  *Evans v. The M. I. & N. Ry. Co.*, 64 Mo., 453; *Provolt v. The C., R. I. & P. R. R. Co.*, 69 Mo., 640; *Same v. Same*, 57 Mo., 262–264; *Drury v. Midland R. R.*, 127 Mass., 576; *Mims v. M. V. & W. R. R. Co.*, 3 Kelly, 340–342; *Gillison v. S. & C. R. R. Co.*, 7 S. C., 180; *Kittell v. Railroad Co.*, 56 Vt., 109; *Adams v. Railroad Co.*, 57 Vt., 248; *Pfeifer v. The S. & F. L. R. R. Co.*, 18 Wis., 164; Mills on Eminent Domain, [2d Ed.] 140–144.

But it is insisted that appellee is not responsible for the debts of its predecessors.  This is true.  While it did not assume their personal liabilities, it could only take from them by purchase what they had a right to convey.  As said in Lewis on Eminent Domain, sec. 621: ''No rights can be acquired in private property under the power of eminent do-

8. SAME: Same: Alienation of land wrongfully taken.

main except subject to the duty of making just compensation therefor.    Consequently, the party originally taking or occupying the property cannot transfer to another, by mortgage, lease or otherwise, any right in the property except subject to the same duty.    In other words, the owner's claim for just compensation is paramount to any right which can be derived by or through the party making or seeking the condemnation.''    The appellee was not bound to accept property appropriated by its predecessor without. right, and could only do so subject to the duty of making compensation, unless the owner was estopped from claiming it.    *Drury v. Midland R. R.*, 127 Mass., 576; *Gilman v. The S. & F. L. R. R. Co.*, 40 Wis., 653; *Mims v. M. & W. R. R. Co.*, 3 Kelley, 340–342; *Kendall v. Railroad Co.*, 55 Vt., 438; *Gillison v. S. & C. R. R. Co.*, 7 S. C., 180; *Adams v. Railroad Co.*, 57 Vt., 250; *Pfeifer v. The S. & F. L. R. R. Co.*, 18 Wis., 166.

In the *Western Pennsylvania Railroad Company v. Johnston*, 59 Penn. St., 295, the Northwestern Railroad Company appropriated the property of one Johnston for the purposes of its road.    For the taking and occupying his land Johnston recovered five hundred dollars.    Under a mortgage of its whole road and all its rights, all its property was sold and purchased by one Hirst in trust for its bondholders. The bondholders were incorporated under the name of the Western Pennsylvania Railroad Company, under an act of the assembly; and Hirst conveyed the property and franchises of the Northwestern Pennsylvania Railroad Company to the new company.    The act incorporating the new company provided: ''That all unpaid damages which have accrued to the land owners by reason of the original construction of said road, shall remain forever, until paid, a lien upon

said road.'' Mr. Justice Agnew, in discussing the liability of the new company for property taken by the old company, for the court said: "But this is not enough to determine the case, for it remains to be seen whether the damages can be recovered from the Western Pennsylvania Railroad Company. Perhaps it would be sufficient for this case to say that the Western Pennsylvania Railroad Company accepted a charter repealing the charter of the Northwestern Railroad Company, and providing that the damages of the land owners remaining unpaid should remain a lien on the road till paid, and, therefore, that the legislature clearly intended that they should be paid by the new company which, under the deed from Hirst and under its charter, is possessed of all the rights and interests of the old company. But the case rests upon other grounds. The plaintiff, who has never parted with his rights, *stands on the higher fundamental right of property*—that it shall be taken and used by no one for the public purpose of a railroad without just compensation being made to him. *Monongahela Nav. Co. v. Coons*, 6 W. & S., 114; Yost's Report, 5 Harris, 524; *Borough of Harrisburgh v. Crangle*, 3 W. & S., 460. This is a sacred constitutional right not to be spirited away by refinement. If, therefore, the original occupant has so managed its cards as to escape payment until it has divested itself of its interest by any form of alienation, its alienee, mediate or immediate, if it would enjoy the uncompensated right, must pay the price of it, unless it can show an equity growing out of the conduct of the owner of the soil which would estop him. It must not be forgotten we are treating of a case where the owner has done nothing to divest his right by his own act or alienation, but where the alienee of the original actor stands upon a seizure at law,

which must be shown to have conformed to the law in all its steps, in order to deprive the owner of his title. The mortgage was but a mode of alienation of the estate of the mortgagor, but could not operate upon the paramount claim of the land owner over the mortgage interest. This, we have seen is not a mere lien, the judgment in the process of assessment not being the source of his right, but the means only of ascertaining the amount of his claim and of enforcing its payment. It could be extinguished only by payment or release. When the alienees of the Northwestern Railroad Company came into possession, therefore, under their purchase, if at all, they took the interest acquired *cum onere.* If possession never had been obtained, then clearly they could get it only by payment or security. In law and equity neither they nor any one claiming the interest of the Northwestern Railroad by an act of eminent domain, subordinated by the law and the constitution to payment as the condition of its exercise, can hold and use the interests thus acquired without compensation. *Borough of Harrisburgh v. Crangle,* 3 W. & S., 460.''

9. SAME: Same: Statute of limitations: When action of land owner barred — Another question arises as to when an action to enforce the claim of the owner against the land taken, or to enjoin the railroad company from using it until compensation is made, is barred by the statute of limitations. Both of these remedies are based entirely upon the right of the original owner to the estate in the land taken; appropriated and converted by the railroad into its right of way. As in the case of a vendor who sells his land on time, and retains the title until the purchase money is paid, he has by virtue of the legal title such an interest in the estate so taken, appropriated and converted as gives him the right to proceed against it for the purpose of producing the sum of money he is en-

titled to by reason of the appropriation. As in other cases, however, the right to this estate may be divested by adverse possession. The possession of the railroad company, although wrong in the beginning, may ripen into a right by virtue of the continuance of the wrong for the requisite statutory period. As seven years adverse possession, under the statutes of this State, will bar an action to recover lands, it will be sufficient to bar the action to enforce the claim of the owner against the land or to enjoin the railroad company from using it until just compensation is made, as in that time the right necessary to support the action will be divested, and there will be no basis upon which it can be maintained.

In *Howard v. State*, 47 Ark., 431, and *Patton v. State*, 50 Ark., 53, it was held by this court, that "a road becomes established as a public highway, by prescription, when the public, with the knowledge of the owner of the soil, has claimed and continuously exercised the right of using it for a public highway for the period of seven years, unless it was so used by leave, favor or mistake." In the Patton case it was said, "the right to a public highway acquired in this manner is based upon adverse possession for the full statutory period of limitation." The same doctrine applies with equal force to railroads. In both cases the land is taken and appropriated and used as a highway for the public benefit. We know of no reason why the same limitation should not prevail in both cases.

Appellants say that appellee has infringed upon their riparian rights. Their land borders upon the Mississippi river, a navigable stream. They are, therefore, entitled to certain rights as riparian proprietors. "Among these rights are access to the navigable part of the river from the front part of their land, the right to make a landing, wharf or pier for

10. SAME: Same: Damage to riparian rights.

their own use or for the use of the public," and to the privilege of keeping a public ferry over or across the Mississippi river, "subject to such general rules and regulations as the legislature may see proper to impose for the protection of the rights of the public, whatever those may be." These rights of the appellants are property, and are "valuable, and though they must be enjoyed in due subjection to the rights of the public, they cannot be arbitrarily or capriciously destroyed or impaired. They are rights of which, when once vested, the owners can only be deprived in accordance with established law, and if necessary that they be taken for the public good, upon due compensation." *Yates v. Milwaukee*, 10 Wall., 497; *Little Rock & Fort Smith Ry. v. McGehee*, 41 Ark., 202; *L. R. Junction Ry. v. Woodruff*, 49 Ark., 381.

Appellants further insist that they have been damaged by appellee running a transfer boat across the river; and attempt to show that it sometimes transported persons across the river for pay, who were not passengers on its trains. But there is no evidence that appellants, or any of them, ever had a license to keep a public ferry. If they did not, they had no right to keep a ferry so as to charge a compensation for transporting persons or property over the river; and could not have been injured by the running of the transfer boat, and can claim nothing on that account. They are, however, entitled to the damages they have suffered by reason of their riparian rights having become less valuable by reason of appellee's tracks, buildings, structures, and other improvements, as held in *Little Rock & Fort Smith Ry. v. McGehee*, 41 Ark., 202; Mansfield's Digest, sec. 3311.

But appellee contends "that, after lands are partitioned, or conveyed in separate parcels, riparian rights cannot re-

Organ v. Memphis and Little Rock Railroad Company.

main in common; because these are a part of the land itself, and each parcel of land bounded by water must necessarily have its riparian rights attached to it as an essential part of. its very being,'' and that the land in question having been divided between appellants, they cannot claim and hold the riparian rights pertaining thereto in common, and bring a joint action on account of an infringement of the same, or jointly maintain this action in respect to the infringement of such rights. On the other hand appellants say that the land was divided between them, without reference to the riparian rights pertaining to the land, and it was agreed that these rights should remain undivided and be held in common as if the land had not been divided, and that they had ever remained and were their joint property. If they wish to treat these rights as their common property we see no reason why appellee can complain. It cannot be injured thereby, and it is a matter which concerns appellants and no one else.

Since the commencement of this action the bank of the river has caved to such an extent that not one of the railroad tracks, or buildings, or structures of any kind of appellee on the land of appellants remain now where they were then. As the bank washed into the river, appellee moved them back on the land adjacent to the river. It is evident, therefore, that as to so much of appellants' land as has been washed into the river no action can be maintained to enforce a claim against it or to enjoin the use of it until compensation is made. But for the appropriation of such land to its use appellee is personally responsible, and upon that personal responsibility appellants can only rely for recovery. .

Under the agreement of appellants and appellee, both parties are entitled to the benefit of the facts as to the caving of the banks of the river and the removal of appellee's

11. SAME: Same: Personal responsibility of company.

tracks and buildings on account thereof.    Appellants are entitled to damages or compensation for their land, which appellee has appropriated since the commencement of this action, and for so much of the land as it has taken during the pendancy of this cause and now uses in the operation of its railroad, they are entitled to an order of injunction restraining appellee from using it until compensation therefor is made.    We think appellants are entitled to this order because of the pendancy of this action.    While it has been pending and appellants have been asking for an injunction restraining appellee from using their land for railroad purposes until compensation should be made, it cannot be said that they stood by and acquiesced in the use of it.    Before the enforcement of the order, however, appellee should be allowed a reasonable time after the damages are assessed in which to make the compensation.

Under the agreement of the parties appellee is entitled to the benefit of the statute of limitations in all cases where the recovery of the relief sought by appellants is barred thereby. On account of the numerous appellants and because this cause will have to be remanded we will not attempt to ascertain whether any or how many of them are barred.

It is impossible to ascertain from the evidence before us what damages or compensation the appellants are entitled to. It is evident that they are entitled to some.    It was agreed between the parties that the taking of the testimony as to damages of all kinds might be deferred until the final hearing, and that it might be thereafter taken, if desired, upon reference to a master.    For this reason, doubtless, it was not taken.

The court erred in dismissing the appellants' complaint. The judgment of the circuit court is, therefore, reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.