MEMPHIS & LITTLE ROCK RAILROAD COMPANY AS RE-ORGANIZED

*v.* ORGAN.

Opinion delivered October 14, 1899.

1. ADVERSE POSSESSION—RIGHT OF WAY.—Appropriation and continued use of land by a railroad company for purposes of its right of way, without the owner's authority, constitute adverse possession, when the owner has notice thereof. (Page 94.)

2. STATUTE OF LIMITATIONS—TACKING POSSESSION.—A railroad company which has purchased the rights and franchises of another railroad company at a foreclosure sale has such a privity of estate as will entitle it to tack its predecessor's adverse possession of land to its own, in order to establish the defense of the statute of limitations. (Page 94.)

3. SAME—RIGHT OF WAY.—An action to enforce a claim for land taken by a railroad company for its right of way without authority is barred as to all claimants who were *sui juris* at the time of the taking, where the evidence shows that the defendant has been in adverse possession for more than seven years. (Page 95.)

4. SAME—MARRIED WOMEN.—The Act of April 23, 1873, which authorized married women to sue alone and in their own names, did not by implication repeal the saving clause in their favor in the statute of limitations relating to suits to recover land (Sand. & H. Dig., § 4815.) (Page 95.)

5. SAME—REVERSIONER AND REMAINDERMAN.—While the statute of limitations will not ordinarily run against the owner of a reversionary estate until the particular estate is determined, the statute will bar an action by a reversioner or remainderman to recover damages for land taken and appropriated by a railroad company if he does not bring his action within seven years from the time the land was taken and appropriated, whether the particular estate has been determined or not. (Page 96.)

6. DAMAGES—UNLAWFUL APPROPRIATION OF LAND.—Where a railroad company appropriated a tract of land without authority, and another company acquired the former's rights, and took possession of so much of the land as had not been washed away by the encroachment of the river, the latter company is liable to the owners of the land, not for rent, but for the value of so much of the land only as it received from its predecessor, such value to be estimated as of the time of the original taking. (Page 96.)

Appeal from Crittenden Circuit Court in Chancery.

JAMES E. RIDDICK, Judge.

*Rose, Hemingway & Rose,* for appellants.

The burden of proof, under the statute of limitations, was on the plaintiff. 21 Ark. 386; 43 *id.* 139. The bill and the amended bill did not state a case within the period of limitation; hence the suit should have been dismissed, regardless of what the evidence showed. 16 Ark. 169; 20 Ark. 200; 24 Ark. 390; 9 Pet. 415. The entry of the Federal troops did not affect the continuity of appellant's possession. 20 S. W. 443; 24 Ark. 392; 83 Am. Dec. 499. Possession, once established, is presumed to continue until the contrary is shown. 34 Ark. 102; 30 S. W. 509; 38 N. E. 620. There was no such entry as would break the continuity of appellant's possession. 53 Mich. 461; 47 N. W. 657; 3 Washb. R. Prop. 129, 486; 2 So. Rep. 24; 14 Act. 762; 51 N. W. 295. The mere

failure to rebuild the track after the war was not an abandonment.    29 Atl. 379; 28 Atl. 860; 18 N. E. 830.    Plaintiff is barred by laches extending over about 22 years.    61 Ark. 527; *id.* 575; 14 Ark. 62; 22 *id.* 272; 19 *id.* 16; 55 *id.* 93; 60 *id.* 55.    The agreement under which the railroad company entered the lands gave them an easment therein, which became indefeasible on their building the road.    37 So. Rep. 303; 19 Ark. 24.    It must be presumed that, after the  lapse of so  great a time, the contract not being produced,  appellant satisfactorily complied with its terms.    Lawson, Presumptive Ev. 308, 406, 407, 413, 419.    This being true, the plaintiff had no cause of action, and the demurrer should have been sustained. 29 N. Y. 634; 13 Am. & Eng. Enc. Law, 547; 1 Wash. R. Prop. p. 630, § 36.    As the terms of agreement are not set out, the presumption is that they justified the railroad company's action. 46 Ark. 131; Lawson, Presumptive Ev. 93; 32 Ark. 764.

*Wm. M. Randolph & Sons* and *T. B. Turley,* of Tennessee, for appellee.

Upon the former appeal of this case, this court decided, in effect, that the action was not barred by limitation.    51 Ark. 273–4.    The railroad's right of way over appellees' land was not adverse to their title.    5 Pickle (89 Tenn.) 294;  54 Ark. 608.    As to burden of proof under the statute of limitations, see, Buswell,  Lim. § 236; 43 Ark. 504.    Where the complaint fails to show the date at which the  cause of action accrued, or leaves same in doubt, the defendant must plead the statute.    19 Ark. 16; 56 Ark. 399–401; 28 Ark. 27; 31 Ark. 684; 34 Ark. 164.    The facts in the record being such as to entitle plaintiff to  relief, the  court should have granted it, whether prayed in  the complaint or not.    56 Ark. 399–401. Certainly, the statute of  limitations did not run  against the heirs during the life estates of their fathers.    22 Ark. 567; 35 Ark. 84; 60 Ark. 74.    If any statute of limitations applies to this case, it is the seven year statute.    51 Ark. 270–271. Plaintiff had a right to the full value of the land taken, at the time it was taken, without reference to  the manner, extent or time of the use.    51 Ark. 266;  51 Ark. 324;  51 Ark. 330

54 Ark. 141; 49 Ark. 381. As appellees had no remedy provided for the ascertainment of the compensation and damages due them for their land, and no remedy provided to recover rents during its occupation and use, no statute of limitation could run against them in respect thereto. 87 Tenn. 175–178; 16 Ark. 181; Buswell, Lim. §§ 128, 131–132; Wood, Lim. §117; Ang. Lim. §§ 54, 488; 10 Ark. 228; 25 Ark. 462; 32 Ark. 131, 151–153. The original possession, being under agreement, and not being shown to have changed, cannot ripen into a title. 35 Ark. 500; 40 Ark. 366; 42 Ark. 118; 57 Ark. 157, 158; 43 Ark. 494; 4 How. 289; Wood, Lim. § 260; Sedg. & Wait, Tr. Tit. Land., §§ 736, 751; 57 Ark. 526; 58 Ark. 142; 57 Ark. 97; 33 Ark. 633; 43 Ark. 504, 520. Separate trespassers or separate acts of trespass cannot be connected, for the purposes of the statute of limitations. 48 Ark. 277; 49 Ark. 266, 276; 22 Ark. 79; 24 Ark. 371, 390; Wood, Lim. § 271; 57 Ark. 157–158; 27 Ark. 77. Even if appellant claims to hold in succession to the title of the original company, since it held by contract, appellant's possession is not adverse. The relation of landlord and tenant is implied from their taking as such succession to the original company. Lewis, Em. Dom. § 621; Tay. L. & Ten. §§ 436–437, 629, 705–706; Wood's L. & Ten. §§ 3, 236; Wood's Lim. § 265; 35 Ark. 547; 43 Ark. 469, 494; 43 Ark. 504, 519–521; 56 Ark. 485–493; 40 Ark. 366; 50 Ark. 554; 57 Ark. 526. Mere occupancy without intent to claim title does not confer title. Wood, Lim. § 256, p. 513; Buswell, Lim. § 237; 2 Wall. 328; 59 Ark. 626; 115 U. S. 407. The proper measure of compensation due appellees was the value of the land, just as it was, and not its rental value for the time it was occupied by the appellant. 51 Ark. 266; 51 Ark. 324; 51 Ark. 330; 49 Ark. 381; 54 Ark. 141; 41 Ark. 202; 98 U. S. 403.

*Rose, Hemingway & Rose*, for appellants, in reply.

After appellant's title by limitation was perfected, it owed appellees no rents. 20 Ark. 508; 38 Ark. 181; 20 Ark. 542; 34 Ark. 534; 50 Ark. 140; 23 Ark. 147. The former appeal of this case did not decide the question of limitation. 51 Ark.

274. The decision on the former appeal is not binding on this appeal as to any point not then considered. 52 Ark. 473; 14 *id*. 132. See further as to burden of proof on limitation questions: 6 Ark. 381; 27 Ark. 344; 47 Ark. 172; Abb. Tr. Ev. 822: 2 Greenl. Ev. § 431. The entry and holding of appellant were adverse. 43 N. J. Law, 605; S. C. 11 Am. & Eng. R. Cas. 509; 129 N. Y. 252; S. C. 50 Am. & Eng. R. Cas. 292; 51 Fed. 932; 90 Tenn. 157; S. C. 16 S. W. 64; 80 Ga. 776; 50 Ark. 250; 59 Tex. 29; 24 Fed. 539. As the bill shows no claim within the statutory period, it shows no cause of action. 55 Ark. 92; 20 Ark. 200; 1 Dan. Ch. Pl. & Pr. 559; Story, Eq. Pl. § 484. Appellant has a right to tack its possession to that of its predecessors in title or possession, if that possession has been continuous. 20 Ark. 359; *id*. 508; 40 Ark. 108, Wood, Lim. § 272. To preclude this, a break in possession is essential. 23 Ark. 340. No exceptions by appellant were necessary to the report of the master, because of the agreement of counsel reserving all questions of law. Such agreements are to be liberally construed. 7 Pet. 254; 54 Ark. 346; 150 U. S. 591; 45 Ark. 33; 120 U. S. 777; 3 Burrow, 1477; 8 How. 257. Their effect is to waive all technicalities. 1 Enc. Pl. & Pr. 391, 401; 96 Am. Dec. 748, and note; 144 Mass. 546; 5 Allen, 307; 129 Mass. 32; 11 Pick. 310; 8 Allen. 349: 32 Me. 102; S. C. 52 Am. Dec. 642; 5 Greenl. 140; S. C. 17 Am. Dec.' 211. That, on the evidence, the claim is barred, see: 51 Ark. 271; 50 Ark. 53; 47 Ark. 431; 58 Ark. 503. In respect to the statute of limitations, there is no difference between this and any other case. 115 Ind. 22; S. C. 17 N. E. 171; 37 Md. 237; 22 Wis. 288; 39 Miss. 394; 23 Conn. 421. The plaintiff's cause is barred by laches. 3 Wash. R. Prop. 53, *449; 19 Ark. 16; 55 *id*. 92; 94 U. S. 806; 15 N. E. 256; 25 Am. & Eng. R. Cas. 83. A general demurrer raises this question. 120 U. S. 387. When laches is apparent, plaintiff must specifically excuse it in his bill. 124 U. S. 183. Plaintiffs' silent assent to the building of the tracks, etc., estops them. 36 Ark. 688; 33 Ark. 465; 55 Ark. 85; 60 Ark. 55.

HUGHES, J.  This is the second appeal in this case.  The opinion in the first appeal is reported in 51 Ark. 235 (*Organ* v. *Memphis & Little Rock Railroad Co.*), where many of the facts are set out, and many questions of law involved in the case are discussed and settled, so that in the present appeal mainly questions of fact are involved.  The question of law involved is the statute of limitations, and this depends upon the evidence.

In the former opinion at page 267, 51 Ark., the court, through Judge Battle, said:  "But it is insisted that appellee is not responsible for the debts of its predecessors.  This is true.  While it did not assume their ¡personal liabilities, it could only take from them by purchase what they had a right to convey.  As said in Lewis on Eminent Domain, sec. 621, 'no rights can be acquired in private property under the power of eminent domain except subject to the duty of making just compensation therefor.  Consequently, the party originally taking or occupying the property cannot transfer to another, by mortgage, lease or otherwise, any right in the property except subject to the same duty.  In other words, the owner's claim to just compensation is paramount to any right which can be derived by or through the party making or seeking the condemnation.' "  This means simply that the predecessors of the appellant here could convey to appellant, and that it could take from them, no rights the predecessors did not have.  If the property received by appellant from its predecessor was subject to the right of the appellees in this case to be compensated for the damages sustained by them by the wrongful appropriation of their property by the predecessors of the appellant, it was still liable after its conveyance to the appellant.  The court on the first appeal also said:  "The possession of the railroad company, although wrong in the beginning, may ripen into a right by virtue of the continuance of the wrong for the requisite statutory period.  As seven year's adverse possession, under the statutes of this state, will bar an action to recover lands, it will be sufficient to bar the action to enforce the claim of the owner against the land or to enjoin the railroad company from using it until just compensation is made, as in that time the right necessary to support the action will be divested, and there

will be no basis upon which it can be maintained." 51 Ark. 271; citing: *Howard* v. *State*, 47 Ark. 431; *Patton* v. *State*, 50 Ark. 53, where "it was held by this court that 'a road becomes established as a public highway, by prescription, when the public, with the knowledge of the owner of the soil, has claimed and continuously exercised the right of using it for a public highway for the period of seven years, unless it was so used by leave, favor or mistake.' In the Patton case it was said, 'the right to a public highway acquired in this manner is based upon adverse possession for the full statutory period of limitation.' The same doctrine applies with equal force to railroads. In both cases the land is taken and appropriated and used as a highway for the public benefit. We know of no reason why the same limitation should not prevail in both cases."

The court said further on the first appeal, p. 274: "Under the agreement of the parties, appellee [Memphis & Little Rock Rd. Co.] is entitled to the benefit of the statute of limitations in all cases where the recovery of the relief sought by the appellants [Organ et al.] is barred thereby: On account of the numerous appellants, and because the cause will have to be remanded, we will not attempt to ascertain whether any and how many of them are barred. It is impossible to ascertain from the evidence before us what damages or compensation the appellants are entitled to. It is evident that they are entitled to some. It was agreed between the parties that the taking of the testimony as to damages of all kinds might be deferred until the final hearing, and that it might be thereafter taken, if desired, upon reference to a master. For this reason, doubtless, it was not taken."

I have thus quoted largely from the opinion on the first appeal, in order that the questions in the case before the lower court on the second hearing may be fully understood.

The appellee in this case contends that what the court said in this second paragraph, quoted from page 274 of the opinion in the first appeal, (*i. e.* that the appellants on the first appeal were entitled to some relief), settled the question as to the statute of limitations. But not so. The court, when we consider all that was said, must be understood to have meant that if the

railroad company had taken the land, and appropriated it to its use, and had not condemned or paid for it, the appellants in the former appeal were entitled to some relief, if their right of action was not barred when they brought their suit; and this question was expressly left and referred to the lower court for determination. Let us now consider the evidence in the case at bar upon the question of the statute of limitations, and determine if the right of action of the appellees was barred when they brought their suit. The right of action of the plaintiffs (the appellees), if not barred by the statute of limitations, was the right to recover compensation for the value of their land taken and appropriated by the defendant (the appellant)' at the time it was taken. In the statement of facts in the opinion on the former appeal (51 Ark. 254) the court said: "The track [of the railroad] running up the bank of the river was used until 1859, when it was taken up, and the track was changed and laid through appellant's land, in the locality of the track used by the appellee [railroad company] when this suit was begun. This last mentioned track was used until the war came on. It was then torn up by the military authorities of the United States. After the war the railroad company again laid iron on the track running up the bank of the river to the depot before mentioned, which was used until about the year 1873 or 1874, when the iron on it was taken up, and put back by the railroad company on the track running through the land of appellants, which was used when this suit was commenced (which was August 3, 1880,) and afterwards until the land caved into the river. At the same time the iron was moved the railroad abandoned the land covered by the track running up the river to the owner. The depot on the bank, however, was continuously used from about the year 1866, by the appellee and its predecessors, until the land on which it stood caved into the river. * * * * "The switches were not placed until about the year 1873 or 1874, and were changed from time to time as the railroad company saw proper." (51 Ark. 254 and 255.) The facts are shown by the agreed statement of facts in the case. The agreement of counsel shows that the line of the railway was surveyed across this land sometime before 1886.

Bogle, a witness for the plaintiff, said: "The railroad had the use of the land, and, whenever they wanted to put down a side track, they did so, without asking anybody. They also took sand off the land." W. S. Smith, who was superintendent of the road, says: "The eastern terminus of the Memphis & Little Rock Railroad was last changed from Hopefield to the point where it now is prior to 1870." Vance, one of the plaintiffs, testified that he gave Greenlaw, manager of the road, notice to quit digging on the land in 1872 or 1873. Forgle, a witness for plaintiffs, testified that the inclines were built in 1873. Waddle, a witness for plaintiff, testified that the tracks were on the land in 1873. Malone, for plaintiffs, testified that he helped put down the first incline about 1869. Organ, for the plaintiffs, testified that in 1873 the railroad company had on the land a stone house, a freight depot, a turntable and a roundhouse. W. E. Smith, who was introduced as a witness both by plaintiffs and defendant, and who had been general manager of the road, testified that the track was relaid in the early part of 1873, and that it had been used ever since. His testimony is definite, and he is not contradicted, but is rather corroborated. The master, to whom a reference was made with directions to find the facts, found that there were some eighteen to twenty structures upon the plaintiff's land; that there was one main track of railroad upon it, and some eight or ten side tracks; that there was a wharf boat and elevator on the river, which was moved to plaintiff's land, and also an incline leading from the top of the bank of plaintiff's land; but that all of them were on the right of way of defendant's line, except one hole, which was made by the excavation of dirt in the year 1877 by defendant, and covered about three acres of land. He says: "I find the depot house was constructed in 1866. The other houses were erected subsequent to that time, but I am unable to find the dates of their erection." He reports that nearly all these houses caved into the river between May, 1883, and May, 1884. He says: "I find the plaintiffs owned about 270 acres of land at the time the defendant entered into possession of the position used by it, and about fifteen acres of the land is all that remains. The

defendant is now using what is. known as the 'Grave Yard Track' covering a fraction over an acre." The master, in his report, found that the railroad company, as reorganized for the year 1878, used of plaintiff's land 26 acres, for which use he assessed $390.00 with interest to November 1, 1893, 15½ years at 6 per cent, $362.70, and the same for the years from 1879 to 1885 inclusive. From May 1, 1884, to May 1, 1889, both inclusive, the area of the land used by the appellant (railroad company) annually grew less by reason of caving into the river, until in 1893 there remained only five acres. The aggregate charges under this head were $5,506.75. The master continued his charge for that remaining each year at the same price, with the same rate of interest. He then stated an account charging the railroad company in favor of the plaintiffs with incline privileges aggregating $1,793.00. He then stated an account against the railroad company in favor of the plaintiffs for wharf boat and elevator privileges amounting to $2,880.00. He then charged the railroad company with $247.50 for "one acre of land now in use," and 16½ years' interest, in the aggregate $377.55, and with $500 for excavating three acres of land, and 15 years' interest thereon, in the aggregate $975, making a grand total of $11,532.30, which the court upon exceptions increased to $13,868.80, and gave a decree therefor, with interest; the items of increase being 50 per cent. on the findings of the master for incline privileges, and 10 per cent. over the master's findings or estimate for wharf boat and elevator privileges. The railroad appealed.

Was the right of action of the appellees barred on the 3d of August, 1880, when they brought their suit? The only definite and satisfactory evidence upon the point is that the track was laid where it now is, and the possession of the land taken, in the early part of the year 1873. If this is true, and we must so regard it, then it follows that from the early part of 1873 till the 3d of August, 1880, is more than seven years. The appellant took possession and commenced to operate the road May 1, 1877. Did the statute begin to run from the early part of 1873, when the Memphis & Little Rock Railway Company, the predecessor of the Memphis & Little Rock Rail-

way Company, as reorganized, laid its track where it now is, and has been since the early part of 1873, or from the time the present company (the appellant) took charge—May 1, 1857?

One of the contentions of the appellees is that the appellant's possession was not adverse; in effect, that it was not hostile, but permissive. This we think is not the case. Appellees contend that appellant took, appropriated and used and continued to use their land without authority; and if this did not constitute hostile, adverse holding, what would? This was an invasion of their rights, and they had notice of it, and a cause of action accrued to them at once by reason thereof. But appellees say the appellant, in respect to the statute of limitations cannot be considered as the successor of the Memphis & Little Rock Railway Company, whose property, franchises and rights it purchased under a decree of foreclosure rendered by the United States district court. Why not? They say there is no privity. In this they are in error. Mr. Wood in the second volume of his work on Limitations says: "But if a successive privity exists between them, the last occupant may avail himself of the occupancy of his predecessors. * * * In order to create the privity requisite to enable a subsequent occupant to tack to his possession that of a prior occupant, it is not necessary there should be a conveyance in writing. It is sufficient if it is shown that the prior occupant transferred his possession to him, even though by parol. So, too, the possession of a prior occupant may be passed by operation of law, as of an execution debtor to the purchaser of the land on execution sale." 2 Wood, Lim. § 271, pp. 695 and 696, and cases cited in the notes. There is no controverting this doctrine. It is the doctrine of our own court.

In the application and operation of the statute of limitations, there is no distinction between corporations and natural persons, under the general provisions of the statute. Corporations are persons, in contemplation of law, and the general provisions of law applicable to natural persons apply in like manner to corporations. *Olcot* v. *Tioga R. R. Co.*, 20 N. Y. 222; *Commercial Bank of Manchester* v. *Nolan*, 7 How. (Miss.) 508.

We are of the opinion that the evidence in the case shows that the right of action of all the plaintiffs not under disability at the time the suit was brought was barred before the 3d of August, 1880, when the summons was issued.

The plaintiffs who were married women and minors when the suit was brought were within the saving clause of the statute, and their right of action was not barred.

Section 4815 of Sand. & H. Dig. provides that "no person or persons, or their heirs, shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments but within seven years next after his, her or their rights to commence, have or maintain such suit shall have come, fallen or accrued; and all suits, either in law or equity, for the recovery of any lands, tenements or hereditaments shall be had and sued within seven years next after title or cause of action accrued, and no time after seven years shall have passed. *Provided*, if any person or persons that are or shall be entitled to commence and prosecute such suit or action in law or equity be or shall be, at the time said right or title first accrued, come or fallen within the age of twenty one years, *femme covert* or *non compos mentis*, that such person or persons, his, her or their heirs, shall and may, notwithstanding said seven years may have expired, bring his or her suit or action, so as such infant, *feme covert* or *non compos mentis*, his, her or their heirs, shall bring the same within three years next after full age, discoverture or coming of sound mind. *Provided*, also, that no cumulative disability shall prevent the bar hereby formed and constituted by the saving of this section." (Act of January, 4, 1851).

"Where seven years have elapsed since the cause of action accrued, and three of those years have been free of disability, the right of entry or of action is tolled." *Chandler* v. *Neighbors*, 44 Ark. 479.

The act of April 28, 1873, which authorizes married women to sue alone and in their own names, does not repeal by implication the saving clause in their favor in the statute of limitations. *Hershy* v. *Latham*, 42 Ark. 305. The statute gives a married woman three years after discoverture (that is,

after the release from the bonds of matrimony by death of the husband or by divorce) in which to bring her suit. The statute as to married women does not say "three years after disability removed," but "three years after discoverture."

Ordinarily, "the statute of limitations will not run against the owner of a reversionary estate until the particular estate be determined. *Jones* v. *Freed*, 42 Ark. 357.

When land is taken and appropriated by the railroad company, the law contemplates that not partial, but full, compensation shall be made to all persons having an interest in the land, and the right of action accrues to all such persons, not under the disability of coverture or infancy, upon the taking and appropriation of the land by the company; and the statute will bar an action by a reversioner or remainderman if he does not bring his action within seven years from the time the land is taken and appropriated. See *Bentonville R. R. Co.* v. *Baker*, 45 Ark. 252.

The court below seems to have tried this case upon the theory that the plaintiffs were entitled to recover for rents for the use and occupation by the defendant of their lands, and the master's report is based on that theory. This was error. Plaintiffs, if entitled to recover, were entitled to recover against the defendant the value of the land of plaintiffs taken and appropriated at the time it was taken, and this recovery to be confined to the value of plaintiff's land received by the defendant from its predecessor.

We find that, according to the law and the evidence in this case, the following-named plaintiffs' right of action were not barred when the suit was brought, and that the right of action of all the other plaintiffs was barred when the suit was commenced on the 3d of August, 1880, the date of the issuance of the summons as shown by the record: *Osceola Chapline*, who married George Chapline in 1873, who died in 1878, only about ten years before the suit was brought. She was a married woman in 1873, when the right of action accrued. She was the daughter and one of the heirs of Laura Nelson, nee Winchester, and granddaughter of Marcus B. Winchester. *Alice Cole*, nee Nelson, daughter of John and Laura Nelson,

born in 1849, married Frank Cole July, 1868, was a married woman, when right of action accrued in early part of 1873. *Loftus Nelson*, son of John and Laura Nelson, born in 1860. *Theresa Louise Lang*, born in 1862, wife of James Lang, and heir of Louisa Winchester. Valeria Winchester married Robert Richards, and died in 1879. Her heirs who were not barred were *Charles, Lawrence, Edward* and *Jesse.* She was a married woman at the time of her death.

Reversed and remanded, with directions to proceed in accordance with this opinion.

RIDDICK, J., did not sit in this case.