LANG et al. v. CHOCTAW, O. & G. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. May 27, 1912.)

No. 3,600.

1. FRAUDS, STATUTE OF (§ 63*)—MORTGAGES (§ 13*)—CONSTRUCTION AND OPERATION—AFTER-ACQUIRED PROPERTY.

Neither a statute of frauds requiring contracts for the sale of real estate to be in writing, etc., nor a statutory provision that a mortgage shall be a lien on the mortgaged property from the time of record, and not before, affect the validity of a railroad mortgage on after-acquired property, covered by its terms, although it was not acquired by the mortgagor until after the mortgage was recorded.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83, 97–104; Dec. Dig. § 63;* Mortgages, Cent. Dig. § 15; Dec. Dig. § 13.*]

2. RAILROADS (§ 191*)—FORECLOSURE SALE—PROPERTY PASSING.

The sale on a foreclosure of a railroad mortgage containing a general provision covering after-acquired property conveys title to such after-acquired property, although it is not specifically described in the proceedings or decree.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 624–633; Dec. Dig. § 191.*]

3. RAILROADS (§ 194*)—PURCHASER AT FORECLOSURE SALE—EXISTING LIENS.

A railroad company appropriated and used, without paying therefor, about 90 acres of land on the bank of the Mississippi river owned by complainants. After the greater part of the land had been lost by caving into the river, defendant acquired the railroad property through foreclosure sale. Held that, while complainants were entitled to recover a judgment against the original taker for the full value of the land taken, treating the transaction as a sale, such judgment could not be made an equitable lien as against defendant, except to the amount of the value of the land which remained and passed to it by the sale, and which it used.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 643–655; Dec. Dig. § 194.*]

4. LIMITATION OF ACTIONS (§ 118*)—COMMENCEMENT OF ACTION—SUIT TO ESTABLISH LIEN.

A suit to establish a personal judgment as an equitable lien, being on a separate and distinct cause of action, does not relate back to the commencement of the original action, and is subject to the defense of limitation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 527, 528; Dec. Dig. § 118.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

Suit in equity by Theresa L. Lang and others against the Choctaw, Oklahoma & Gulf Railroad Company and others. Decree for complainants for partial relief, and they appeal. Affirmed.

Wm. M. Randolph (George Randolph and Wassell Randolph, on the brief), for appellants.

Thos. S. Buzbee, for appellees.

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

W. H. MUNGER, District Judge. This action is one brought to have a certain judgment obtained by appellants on the 27th of February, 1902, against the Memphis & Little Rock Railroad Company as reorganized, decreed a lien upon the railroad of one of appellees, the Choctaw, Oklahoma & Gulf Railroad Company, and to have a certain described tract of land decreed to be the property of the Memphis & Little Rock Railroad Company as reorganized, and subject to an execution on said judgment.

The principal matter involved in this controversy has been before the Supreme Court of the state three times and reported under the title of Organ v. Memphis & Little Rock Railroad Co., 51 Ark. 235, 11 S. W. 96, Memphis & Little Rock Railroad Co. v. Organ, 67 Ark. 84, 55 S. W. 952, Memphis & Little Rock Railroad Co. v. Organ, 70 Ark. 195, 66 S. W. 922, and in this court as Lang v. Choctaw, Oklahoma & Gulf Railroad Co., 160 Fed. 355, 87 C. C. A. 307. In those cases the essential facts are fully stated in detail, and it will be sufficient for the proper disposition of this case to quote from the statement of facts in Lang v. Choctaw, Oklahoma & Gulf Railroad Co., supra, the following:

"The chief subject of this controversy is the railroad from Little Rock, in the state of Arkansas, to Hopefield, upon the west bank of the Mississippi river opposite Memphis. In 1887, the Little Rock & Memphis Railroad Company, hereinafter called the Little Rock Company, succeeded to the title to this railroad of the Little Rock & Memphis Railroad Company as reorganized, and mortgaged the railroad and its appurtenances to secure its bonds to the amount of $3,186,000. The reorganized company, and its predecessor in title, had at various times between 1872 and 1887 appropriated to the use of its railroad without compensation about 90 acres of land on the west bank of the Mississippi river at Hopefield, to undivided interests in which the defendants had title. This land was used for a time by these predecessors, and it then caved into the river and disappeared, so that little of it is, or ever has been, in the possession or use of the Gulf Company. In 1880 the defendants commenced a suit in the circuit court of Crittenden county against the old reorganized company, in which they prayed that the amount due them for the use of this land and for the removal of earth and timber therefrom by that company and by its predecessor in title might be ascertained and paid, and that the reorganized company might be enjoined from using this land until this amount was paid. There was no claim to or prayer for any lien upon the railroad in the bill in that suit, or in the amended bill therein, which was subsequently filed. The final decree in that suit was rendered on February 27, 1902, and it was that the defendants should recover from the reorganized company $17,956.36, and interest from September 23, 1901, and costs, and it granted no other relief. * * * On June 1, 1893, the Central

Trust Company, the trustee named in the mortgage of the railroad and its appurtenances made by the Little Rock Company in 1887, filed its bill in the court below to foreclose that mortgage, and on that day the court appointed a receiver of the railroad and its appurtenances, who took immediate possession thereof and held the same until he delivered this property to the purchaser under the foreclosure sale, which was made on October 25, 1898. The Little Rock Company was a party defendant to this foreclosure, and the decree which was rendered on October 22, 1894, provided that the property should be sold, that all equity of redemption of the Little Rock Company and all persons claiming under it should be thereupon foreclosed and forever barred, that in addition to the purchase price which should be bid the purchaser should pay 'all claims filed in this cause, but only when the court shall allow such claims and adjudge the same to be prior in lien to the mortgage foreclosed in this suit, and in accordance with the order or orders of the court allowing such claims and adjudging with respect thereto.' The decree also contained these provisions: 'The court reserves the right to retake and resell said property in case of the failure or neglect of the purchaser or purchasers, or his or their assigns, approved by the court aforesaid, to comply with any order of the court in respect to the payment of receiver's certificates, debts, or obligations, or of prior liens or claims above mentioned, within 20 days after service of such order upon such purchaser or purchasers, or his or their assigns. * * * All questions not hereby disposed of and determined are hereby reserved for further adjudication, the settlement of the same being held not to be necessary for the purposes of this decree. And the court reserves all right to make such further order at the foot of this decree as may seem just and proper.' While this suit was pending, and the railroad and its appurtenances were in the possession of the receiver, and on September 28, 1895, the defendants filed their petition of intervention therein, in which they alleged that by virtue of their claim against the old reorganized company, for which they had then secured the judgment for $13,868.80, which was subsequently reversed, they had a lien upon the line of railroad between Little Rock and Memphis, which the Little Rock Company had mortgaged to the Central Trust Company, which was prior in lien and superior in equity to the lien of the mortgage, and prayed that the railroad should be first applied to the satisfaction of that lien. On August 7, 1896, they filed an amended and supplemental petition in this foreclosure suit, and prayed that the railroad then in the possession and under the control of the receiver of the court below should be adjudged by that court to be subject to their alleged lien for their claim against the old reorganized company, that such lien be declared to be superior and paramount to all other liens and claims, and that the railroad and its appurtenances be sold for the payment thereof, or that a sufficient amount of the proceeds of the sale in the foreclosure suit be segregated, set apart, and applied to the amount due them in preference to all other claims and demands whatsoever."

After the disposition in this court of the case of Lang v. Choctaw, Oklahoma & Gulf Railroad Co., supra, appellants' application to have their judgment against the Memphis & Little Rock Railroad Company as reorganized decreed a lien superior to the mortgage involved in the foreclosure suit, and also to have a certain described tract of land, comprising 89.63 acres, claimed to have been acquired by appellees under the foreclosure proceedings, to be still the property of the Memphis & Little Rock Railroad Company as reorganized and subject to an execution upon said judgment, was tried in the court below, and a decree rendered that such tract of land was acquired by appellees in the foreclosure proceedings, and was not subject to execution upon appellants' judgment. The court further found the value of the land of appellants, which had been taken possession of and appropriated by the Choctaw, Oklahoma & Gulf Railroad Company, appellee, consist-

ing of one and a fraction acres, and adjudged that such amount should be paid to appellants. From that decree appellants have prosecuted this appeal.

Two questions are presented: First. Did the title to the before described tract of land pass under the foreclosure to appellee? Second. Are appellants entitled to a lien upon the railroad of appellee for the full amount of their said judgment obtained against the Memphis & Little Rock Railroad Company as reorganized?

[1] Upon the first question, the facts, in addition to those before stated, are that the Memphis & Little Rock Railroad Company as reorganized executed a trust deed May 2, 1877, covering all of their property, specifically describing the railroad depot grounds and appurtenances: said trust deed containing the following provision:

"And also all and singular all lands, real estate, property of every kind, real, personal, or mixed, books of account, records, muniments and evidences of title, and choses in action which are now owned or may hereafter be acquired by said railroad company, party of the first part."

The property in question was not conveyed to the Memphis & Little Rock Railroad Company as reorganized until July 27, 1887, 10 years after the executing of the before-mentioned mortgage. After the company obtained title to this land the mortgage was foreclosed under a power of sale contained therein, and all of the property mentioned therein and then owned by mortgagor was sold, and the same acquired by the Little Rock & Memphis Railroad Company, September 1, 1887. The Little Rock & Memphis Railroad Company, on the 1st of September, 1887, executed a mortgage to the Central Trust Company, as trustee, being the mortgage before mentioned as having been foreclosed in the Circuit Court of the United States for the Eastern District of Arkansas, under which foreclosure proceedings the appellees acquired title. Appellants, in their brief, say:

"The whole case of the appellees must rest on the expression in the mortgage, made by the Memphis & Little Rock Railroad Company as reorganized, dated May 2, 1877, following the specific description of what was declared to be intended to be conveyed by that mortgage, in these words: 'And also all and singular all lands, real estate, property of every kind, real, personal, or mixed, books of account, records, muniments and evidences of title, and choses in action which are now owned or may hereafter be acquired by said railroad company, party of the first part.'"

Appellants, in their brief, further say:

"We do not deny that a deed of conveyance may be made to convey after-acquired property, nor that a mortgage may lawfully be made to embrace after-acquired property, and concede that such deeds may be made and such mortgages executed lawfully."

Appellants say that the statute of frauds of the state of Arkansas declares:

"No action shall be brought * * * to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or any interest in, or concerning them * * * unless the agreement, promise, or contract, upon which such action shall be brought, or some memorandum, or note thereof, shall be made in writing, and signed by the party to be charged

therewith, or signed by some other person by him thereunto properly authorized."

And the statute of the state, relative to mortgages, which provides:

"All mortgages, whether for real or personal estate, shall be proven and acknowledged in the same manner that deeds for the conveyance of real estate are now required by law to be proven or acknowledged, and when so proven or acknowledged shall be recorded, if for lands in the county, or counties, in which the lands lie"

—and the further statute that:

"Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property, from the time the same is filed in the recorder's office for record, and not before"

—are pertinent, and argue that, in view of these statutory provisions the clause in the mortgage of May 2, 1877, relating to the after-acquired lands, did not have the effect to include them therein, and such land did not pass under the foreclosure of that mortgage.

That a mortgage may, as a general rule, cover and be a lien upon after-acquired real estate, is not only conceded by appellants, but fully supported by the authorities. Pennock et al. v. Coe, 23 How. 117, 16 L. Ed. 436; Central Trust Co. v. Kneeland, 138 U. S. 414, 11 Sup. Ct. 357, 34 L. Ed. 1014; Tippett & Wood v. Barham, 180 Fed. 76, 103 C. C. A. 430.

We fail to perceive how the statutory provisions relied upon by counsel for appellant in any way modify this general rule. The first provision of the statute is that no action shall be brought to charge any person upon any contract for the sale of lands, etc., unless the contract shall be in writing, signed by the party. The contract of mortgage was in writing, duly executed upon the part of the mortgagor, the Memphis & Little Rock Railroad Company, and expressly provided that it should cover after-acquired real estate. Hence it is clear that the contract covering the land in question, though after-acquired, met the requirements of the statute; the contract with respect to it being in writing and signed by the party to be charged therewith. The mortgage was recorded, and the provison in the statute that it should be a lien from the time it was filed cannot be construed to prohibit the validity of the provision providing for after-acquired property. As soon as the mortgagor thereafter acquired property such as mentioned in the mortgage, the mortgage attached to the same as a lien, notwithstanding it had been previously filed for record. We think it clear that the 89.63 acres of land in question, although acquired by the Memphis & Little Rock Railroad Company as reorganized after the execution and recording of its mortgage, was covered by it; that the title passed to the purchaser under the foreclosure of that mortgage; that the Memphis & Little Rock Railroad Company as reorganized was by such foreclosure divested of all title and interest in and to said land, and the same vested in the Little Rock & Memphis Railroad Company as of September 1, 1887, and was covered by its mortgage executed on that date to the Central Trust Company as trustee. The mortgage from the Little Rock & Memphis Railroad Company

to the Central Trust Company contained a like provision as the mortgage of Memphis & Little Rock Railroad Company as reorganized, of May 2, 1877, relative to after-acquired property. Such provision in that mortgage, however, is unimportant, as the mortgagor, the Little Rock & Memphis Railroad Company, had acquired the title to the property at the date of the giving of the mortgage to the Central Trust Company.

[2] Again, it is said that, notwithstanding the mortgage covered the land in question by virtue of the after-acquired property clause in the mortgage, it did not pass by the foreclosure, as the foreclosure did not specifically describe this land. In other words, to properly convey by foreclosure, it should, in the foreclosure proceeding, have described what land was after-acquired, so as to give certainty to the deed executed in the foreclosure proceedings; that oral testimony or testimony aliunde cannot be admitted for that purpose. While it is true that there must be a sufficient description in a conveyance to afford a basis for admitting parol evidence to identify the land, as a description cannot be made by parol evidence, yet the law is as stated in Jones on Real Property, § 348:

"A conveyance in general terms of all the lands of the grantor wherever situated, without further description, may be rendered certain as to the lands conveyed by proving what lands grantor owned at the time (citing a large number of authorities)."

Had the provision as to after-acquired real estate not been general, but confined to such after-acquired property as should be used in the operation of the railroad, or as appurtenant to what was then owned, there might be some force in the claim that, under such a provision, the proceedings in foreclosure should specify what after-acquired property came within the provision; but in the mortgage in question there was a general description, covering all after-acquired real estate, and parol evidence is admissible to point out the property covered by the description "may hereafter be acquired."

It follows from these views that such tract of land is not subject to execution upon the judgment of appellants against the Memphis & Little Rock Railroad Company as reorganized, and the judgment of the court below in that respect was clearly right.

[3] Are appellants entitled to a lien for the full amount of their judgment obtained against the Memphis & Little Rock Railroad Company as reorganized? Had appellees taken possession of and occupied all of the land of appellants, the value of which was the basis of their judgment, then the case would fall within the rule announced by this court in Zimmerman v. Kansas City Northwestern R. Co., 144 Fed. 622, 75 C. C. A. 424, and appellees, taking the entire land, would take it subject to the value as fixed by appellants' judgment; but such is not the case.

The evidence discloses the fact that portions of appellants' property taken and used by the Memphis & Little Rock Railroad Company each year caved into the river, and the tracks were moved back from the river from time to time as the land caved in; that appellees took possession and used but a small portion of the land

for which appellants obtained their judgment against them. This question was considered by the Supreme Court of Arkansas, when the case was before it, as reported in 51 Ark. 235, 11 S. W. 96, and the court said:

"Since the commencement of this action the bank of the Mississippi river in front of the land has caved to such an extent that not one of the railroad tracks, nor one of the buildings or structures of any kind, of appellee, remains now where they were then. But the locality on which every track and every building and structure on the land claimed by the appellants was then situated is now a part of the bed of the Mississippi river. As the banks caved and washed into the river, appellee, since the year 1881, has moved back its tracks and buildings, so as to keep them on the land adjacent to the river bank, but outside the caving. * * * The right to the property taken can only be acquired by the company by purchase, by adverse possession for the statutory period, or by statutory proceedings for the assessment of damages. The company can only acquire it through the right of eminent domain by making just compensation. Until then it remains in the original owner. The power to take and the obligation to indemnify for the taking are inseparable. But the owner may waive formal condemnation proceedings, and all formal modes of transfer, and elect to regard the action of the railroad company as taking the land under the right of eminent domain, and demand and recover just compensation (citing authorities). * * * When, therefore, he elects to demand compensation for land necessarily used in the construction of a railroad, he assumes a relation to the railroad company like unto that of a vendor who sells his land on time, and retains the title, and agrees to convey it when the purchase money is paid. He does not part with the title until the compensation is made. The amount to be paid for the land used as a right of way, though called 'damages' or 'compensation,' is in its nature the price of the land taken. If it had been sold to an individual on time, the vendor would have a lien on it for the unpaid purchase money. Equity in that case would treat the unpaid purchase money as a lien on the land sold, and enforce it, on the ground it would be unconscionable to allow the vendee to retain the property voluntarily sold to him and not pay its price. * * * If equity, contrary to its general rule, when property is being taken by a railroad corporation without making just compensation, will interfere to protect him, it certainly would and does not withhold its hand in the enforcement of his claim upon the property for the unpaid purchase price, when his right to pay for it as a constitutional condition precedent to its becoming the property of the corporation still exists in all its original vigor. It is obvious that a court of equity will, in a proper proceeding, so long as the original owner holds the title in the soil, enforce the claim of the owner against the property taken as it does a vendor's lien (citing authorities). * * * Since the commencement of this action the bank of the river has caved to such an extent that not one of the railroad tracks, or buildings, or structures of any kind of appellee on the land of appellants remain now where they were then. As the bank washed into the river, appellee moved them back on the land adjacent to the river. It is evident, therefore, that as to so much of appellants' land as has been washed into the river no action can be maintained to enforce a claim against it or to enjoin the use of it until compensation is made. But for the appropriation of such land to its use appellee is personally responsible, and upon that personal responsibility appellants can only rely for recovery."

When that case was again before the Supreme Court, as reported in 67 Ark. 84, 55 S. W. 952, the court said:

"The court below seems to have tried this case upon the theory that the plaintiffs were entitled to recover for rents for the use and occupation by the defendant of their lands, and the master's report is based on that theory. This was error. Plaintiffs, if entitled to recover, were entitled to recover against the defendant the value of the land of plaintiffs taken and appro-

priated at the time it was taken, and this recovery to be confined to the value of plaintiffs' land received by the defendant from its predecessor."

In adjudging the rights of appellants against the Memphis & Little Rock Railroad Company, we find, then, that the Supreme Court of the state determined that appellants could not have a lien for the lands which had become a part of the river by the caving in of the banks. As to such lands taken by the railroad company, appellants were entitled only to a personal judgment for its value. It was further adjudicated that the Memphis & Little Rock Railroad Company as reorganized was only liable for such of appellants' land as it received from its predecessors, and such is the general rule. As said in Lewis on Eminent Domain (3d Ed.) § 887:

"The first company has taken possession of private property for a public use, and is under an obligation to make just compensation to the owner. When its rights and franchises are transferred to a new company, by foreclosure or otherwise, the new company is under no obligation to use the property, nor is it liable for the debts of the old company. The new company may refuse to use the property at all, or it may condemn it anew. In such case it would lose the benefit of the improvements upon the property. But, if it elects to use the property for the purposes for which it was originally taken, and as the successor of the first company, knowing that the right to use it can be obtained only by the payment of just compensation, it in legal effect assents to the performance of this obligation, and an implied promise to pay the same to the owner arises, upon which an action may be maintained."

The law announced by the Supreme Court of the state in that action is the law of that case. Hence so much of appellants' judgment as represented the value of land taken by the railroad company, and which had subsequently, before the rendition of the judgment, been lost by caving into the river, could not be enforced as an equitable lien.

Applying the law as announced by the Supreme Court in that case, we think it clear that appellees in the present case are only liable for such of appellants' land as it took and received from its predecessor. The value of so much of the land as was taken by appellees was awarded appellants by the trial court, and we think, in this respect, the judgment was right.

[4] Again, plaintiff's action was one for damages only. No mention or suggestion of a lien was made until after it obtained its first judgment of $13,868.80, when it commenced its action in the chancery court of Crittenden county to have such judgment declared a lien. That judgment being reversed, it continued its prosecution as one for damages in personam, without suggesting that they were entitled to a lien, and under the statute of Arkansas, and the decision of its Supreme Court, the statute of limitations had run at the time the claim for a lien was first made. The equitable claim of a lien, being a new and distinct cause of action, did not relate back to the commencement of the original action. U. P. Ry. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983; Whalen v. Gordon et al., 95 Fed. 305, 37 C. C. A. 70.

For the foregoing reasons, the decree below was right, and is in all respects affirmed.